Daniel, J.
 

 The substance of the bill and answer is stated in 1 Iredell’s Equity Rep. 419.
 

 
 *583
 
 After the dissolution of the injunction, the plaintiff retained the bill and replied to the answer. And it now comes on to a hearing on the proofs taken by the parties. We have examined all the evidence in the cause, and it proves that the plaintiff was but a farmer in the neighborhood, upon a small scale ; that he had no skill in mercantile business ; that he was very deficient in the knowledge of arithmetic and reading and writing. He went to the store of the defendants on a certain day in April 1840, and was then perfectly sober, and he there drank some ardent spirits with several other persons, and although somewhat excited by drink, he was not so far intoxicated as to be deprived of his understanding. The spirits were furnished by the defendants in the ordinary course of their dealing, and not with a view to intoxicate the plaintiff or to induce him to enter into the contract, which he shortly thereafter did. After candle light that evening, the plaintiff, being in the store, proposed to sell A. Reed three slaves ; when he was told by Reed that he had no money, but that he would purchase the. slaves if the plaintiff would take goods in paymeut. Whereupon the plaintiff, after looking at the shelves which held the goods, and also at the goods that were behind and under the counter, offered to purchase the whole stock of goods then on hand, and the unexpired lease for a year of the store-house. After some higgling between the parties, a bargain was finally made and the price fixed at $>2,300, to be paid in part by the said lot of slaves at $900, and the plaintiff’s bond for $1,400, to be secured by a deed in trust on his real and personal estate. This being concluded upon, the plaintiff insisted that the bargain should be closed that night; and he thereupon entered into a written agreement in the penalty of $2,000, to complete the said ocntract. The plaintiff then, that night, took into his possession the key of the store. The plaintiff remained that night at a tavern close by the store, where he did not drink any spirits, and the next morning he arose and went to the store, and with the assistance of A. Reed proceeded to act as the owner, and
 
 *584
 
 to sell goods to customers. And during that day, when sober, he executed to the defendant his bond for $>1,400, and a deed in trust on his real and personal estate, as a security for its payment, and also bills of sale for the slaves at $>900. On the third day he delivered the slaves to the defendants. On the fifth day he made an additional purchase of the defendants of a parcel oí goods and merchandize, not included in the first purchase. After he had acted in the business of merchant for three weeks, he proposed to the defendant to rescind the contract, giving as a reason, that a son-of his, who lived in the western country had written to him-to come and reside there, and that he wished to do so. This proposition was declined by the defendants. The plaintiff continued in the business for the space of five or six weeks, when he either sold out to his son, or he and his son sold-the goods at vendue, The evidence, though not satisfactory to shew the actual value of the goods so bought in the gross, renders it exceedingly probable that they were worth considerably less than the price given for them. On the 17th day of September, 1840, this bill was filed, praying the court to rescind the contract, and for general relief. Whether a Court of Equity could have aided the plaintiff, if he had, in a reasonable time alter discovering that he had been imposed upon in the contract, insisted on an abandonment thereof and- applied to be released therefrom, is a question not now necessary for us to decide. Fo-r the subsequent acts of the plaintiff, when he was undoubtedly sober, did, in our opinion sufficiently confirm and validate the contract. And if a person will enter into a hard bargain with his eyes open, equity will not relieve him, unless he can shew fraud in the party contracting with him, or undue means to draw him into the agreement,
 
 Willis
 
 v
 
 Jernagan, 2
 
 Atk. 251. Mere folly in making an agreement without fraud, is no ground for relief in equity,
 
 Millness
 
 v
 
 Cowley,
 
 8 Price 620. Again, the plaintiff had sold the property before he filed his bill, and thereby put it out of his power to place the defendants in
 
 statu
 
 quo. The court is not disposed to rescind a contract-
 
 *585
 
 in such a case, unless a plaintiff is Continuing under the same pressure of distress at the time of the sale as he was at the origin of the transaction, as in the case of expectant heirs, dealing with their expectances for less than their value, under the pressure of distress.
 
 King
 
 v Hamlet,
 
 2
 
 Myln & K. 456.
 
 Mill
 
 v
 
 Morley,
 
 9 Ves. 478.
 
 Gowland
 
 v Defaria, 17 Ves. 20. Drewey on Inj. 16, 18.
 

 We think the bill must be dismissed!
 

 Feb.-Curiam.- Bill dismissed!