Judge Mahsijall
delivered the opinion of the Court.
This petition was brought by Catlett and Buck, upon a note executed to them by George W. and William W. Ray, on the 28th of October, 1849, for the payment of $566.79, eighteen months after date. The defendants filed two pleas in bar, each of which was adjudged bad on demurrer, and a third plea afterwards offered, having been rejected by the Court upon objections made, and a judgment was rendered against them for the amount of the note with interest, &c.
The first plea merely states that the note sued on was executed, delivered, and received on the 2Sth day of October, 1849, and that the day was Sunday, the Christian Sabbath. The second plea states, in addition, that at the data of the note the plaintiffs were drug *533 gists, and were engaged in business as such, and that the note was executed and delivered by the defendants to the plaint-ill’ in the transaction of their ordinary business, that the day of its execution and delivery was Sunday, the Christian Sabbath, and that its execution and delivery were not of the ordinary offices, or of daily necessity or charity, nor were the plaintiffs, or either of them, members of a religious society which observes as a Sabbath any other day of the week than Sunday.
These pleas are founded upon, and bring in question, the construction of a provision contained in the 36th section of the act of 1801, (Slat. Law 1275,) which is in the following words, viz :
“ If any person, on the Sabbath day, shall himself be found laboring at his own or any other trade or calling, or shall employ his apprentices, servants, or slaves, in labor or other business, whether for profit or* amusement, unless expressly permitted by this act, (and no work or business shall be done on the Sabbath day, unless the ordinary household offices of daily necessity or other work of necessity or charity,) he shall forfeit the sum of ten shillings for every offence, deeming every apprentice, servant, or slave so employed, and every day he shall have been employed as constituting a distinct offence. Provided, however, that no person who is a member of any religious society who observes any other day of the week, etc., shall be liable, etc., so that he observes one day in seven agreeable to the regulations aforesaid.”
This is the first case, so far as we know, in which it has been attempted to bring this statutory prohibition to bear upon any civil transaction made or entered into on the Sabbath day. And if it be conceded that the infliction of a penalty for doing the particular act described implies a prohibition of such acts, and that the Courts must regard .every transaction which comes within the prohibition as unlawful, and therefore as being void or unenforcible, the fact that for nearly fifty *534 years, during which time there have been innumerable •private transactions on the Sabbath day, and there has been no attempt to -enforce this consequence by plea, requires that, while the statute shall be fairly construed with a view to the accomplishment of its objects, it shall not be extended by construction, so as to embrace cases which do not come clearly within its terms and obvious meaning.
A plea to an action upon a note that it was made and delivered on the Sabbath day, without any aver ment that the payee ]<new tlio.se facts, or /hat the transaction which induced the giving of the note loot place on the Sabbath day or that it was a prohibited act, is not a good plea.
*534 One object of the statute was to secure the observance of that decorum and quiet which in a Christian country is due to the Christian Sabbath; another object was to secure to all laborers, and especially to apprentices, servants, and slaves, which include all classes of persons who are in the employment of others,' one day of rest in seven. It imposes a penalty upon any person who, on the Sabbath, may labor in any trade jor calling, or who may employ his apprentices, servants, or slaves in any work or business except necessary household offices, fin- other work of necessity or charity. We regai-d the parenthetical prohibition in .the clause relating to apprentices, servants, and slaves, as applicable to the employment of such persons, and as showing what is permitted to be done by them. Following, as it does, the words, “ unless expressly permitted by this act,” which certainly apply to the employment of apprentices, etc., the parenthesis is understood as containing that permission, and as operating with the previous words which have been quoted as an exception, showing in what work or business apprentices, etc., may be employed. But it is not an exception to the first clause which speaks of any person laboring in his own or any other trade or calling. And indeed this clause lequires no such exception, because the performance of the excepted acts by a man for himself would not be ordinarily regarded as laboring in his own or any other trade or calling. Then in order to bring an individual within the penalty of the statute, it must be shown that he himself labored on the Sabbath in some trade or calling, or that he employed others in work or *535 business not permitted by the act. And if this is attempted to be done by plea in avoidance of a contract entered into on Sunday, and is to have the effect, if successful, of indicting a penalty generally much greater than that imposed by the statute, the offense must be shown with at least as much certainty and particularity as if the plea were a presentment on which the statutory penalty is claimed. We are not prepared to decide that the mere execution and delivery of a note, or its mere acceptance, on Sunday, is laboring in any trade or calling, unless it be a part of some other transaction done also on Sunday, which may be regarded as labor in some trade or calling. And if the mere execution and delivery of a note could be deemed such labor, we are satisfied that its mere acceptance could not, and the person accepting it would not, be involved in any consequence of a breach of the law by the other, unless he knew that the note had been made as well as delivered on Sunday. Neither of the pleas avers such knowledge, and neither of them shows that the transaction on which the note was founded took place on Sunday, or that it was a transaction coming within the description of any trade or calling, or that it was affected on Sunday by any person in the employment or by the authority of the plaintiffs. It follows that whatever might be the consequence with respect to a contract clearly within the prohibition of the statute, as to which we do not decide, neither of the pleas makes out such a case, and therefore the demurrer to each was properly sustained.
Nor is a plea avering that plaintiffs were druggists and that the note was given for drugs sold on a particular day of the weelt, without avering that it was on Sunday, a sufficient plea.
In the third plea, which was afterwards offered, there seems to be some attempt to obviate the objections to the two first pleas, by stating that the note was executed on Sunday, in consideration of drugs, medicines, etc., then and there sold by the plaintiffs to the defendants, in the transaction of the ordinary business of the plaintiffs. But although the plea states twice the day of the month and year in which the note was executed and delivered, it does not state in terms *536 the day of the month on which the drags were sold, nor that it was done on Sunday, but uses with refer-encc to this fact the words “ then and there,” which, though generally sufficient, are also generally formal and malleable, and therefore not necessarily precise in confining the reference to the exact day previously named. Besides, the plea does not state that the drags, etc., were then and there delivered, nor show what was done towards a sale, or in relation to it, so as to enable the Court to say that the plaintiffs did in fact labor in their own or any other trade or calling on ihe Sabbath. The fact that a note was executed and delivered in consideration of the drags, is not conclusive as to an actual sale having been previously made. And the plea cannot be helped out by inference from its statements, however probable. There was, therefore, no abuse of the sound discretion of the Court in rejecting this plea.
We are aware that in giving a strict construction to these pleas and to the statute on which they arefounded, we may not have followed the course of decision in some other States where statutes on the same subject have been enacted. But it is probable that these statutes are not precisely like ours in language, and the legislation of some of those countries may have intended more than to secure public decorum and quiet, and abstinence from labor on the Sabbath. Our statutes protect religious worship from disturbance, but can neither compel attendance upon it, nor contribution towards its maintenance, nor any devotional duties or observances. And we are satisfied that the particular clause now in question had no other object in view but that of enforcing decorum and quiet on a- day regarded as holy by a large portion of the community, and of securing rest from labor on that day, (unless where some other day is kept as a religious observance,) to all persons employed to labor for othei-s. It is quite probable that the legislature did not think of any effect which this provision might have upon isolated transactions of a pri *537 vate nature, nor indeed on other transactions in the iorm of contracts. And if, under the judicial duty of maintaining the integrity of the laws, every transaction coming within the prohibition of the statute is to be regarded as void or unenforcible, we feel bound in applying this consequence, probably not within the contemplation of this legislature, to contsrue strictly both the statute and the pleadings under it.
A contract corn» plcied on any other day is not vo'd because some of its terms were agreed upon on Sunday: 18 Vermont Rep. 379. A note given on (he Sabbath is not necessarily void; 10 Mass. Rep. 319.
We refer to the case of Geere vs. Putnam, (10, Mass. Rep. 317,) as deciding that in that State a note executed on Sunday is not necessarily void. And in Vermont, although it has been decided that a contract finally executed on Sunday is void, (0, Vert. Rep. 219.) it has also been decided that, if not fully closed on that day, the contract is not void,- because some of its terms might have been fixed on that day,- or indeed because most of the business out of which the consideration of the contract arose, was transacted on that day. (18, Verint. Rep. 379.) And in Adams vs. Gay, (in which these decisions are referred' to, and which was decided by fhe Supreme Court of Vermont,) it is also affirmed Os a principle for which the case of Williams vs. Paul,, (6, Bingham 603) is referred to, that although the contract be closed on Sunday, yet if affirmed on a subsequent day, it becomes validy And it is further asserted by the Court, that if either party há's done or given anything under such a contrae!, a réfusal of fhe other party upon a subsequent demand tó malee institution or compénsdition should be regarded as a confirmation of the contract. (Seethe casereporled in 10th Law Reporter, 348.) These conservative principles, engrafted by the Courts ón fhe statutes of other' States as' being necessary to prevent the mischief and frauds which might be perpetrated under color of law, Confirm the propriety of the strict construction which we bávé'ád-dopled, and the cases referred to afford authority for, rather than against the conclusion which we have already expressed in the present cáse.
M. Brown for plaintiff, Harlan for defendants.
Wherefore, the judgment is affirmed.’*