[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 517 
The plaintiff derives title to the note from the Auburn Exchange Bank, and if that bank could maintain an action upon it, the plaintiff is entitled to recover in this suit. The bank discounted it in the usual course of business, for Schenck, the maker, and knew nothing respecting the transaction between Schenck and Hyde. If the defence of usury can be sustained, it must be because the note had a legal inception in the hands of Hyde before it was offered to the bank for discount by *Page 518 
Schenck. The jury have found that it had such an inception, and the precise question is whether there was any evidence tending to establish that fact suitable to have been submitted to the jury. I think there was not. All that passed between Schenck and Hyde was that the former handed the note to the latter, who endorsed it, and handed it back. Then Schenck took it to the bank and procured it to be discounted for his own benefit. This was a usual transaction between maker and accommodation endorser. It is supposed that the testimony of Schenck gives another aspect to the transaction, and that it shows, if true, that Hyde, for the short period which intervened between the time it was placed in his hands and the time it was offered to the bank, was the holder of it, and that it was an effective note in his hands. Now it was possible that Hyde should have taken it as his own note, and have then made use of Schenck as his messenger to take it to the bank and get it discounted for him. But this would have been a very incongruous transaction; for if Hyde received the note as his own, his endorsement would have been a nullity while he held it. But Schenck does not swear to any such thing. According to his testimony Hyde was to do what he did do upon the same terms as on the former occasion respecting the other note for $300. What he did respecting that former note was to endorse it for Schenck's accommodation, for a premium of $7.50. The terms referred to obviously relate to the amount of premium. There is not a word in Schenck's testimony which shows that the transaction respecting either of the notes was any thing other than endorsing them for Schenck's accommodation, for a premium, to be paid by Schenck. Such an endorsement does not make the endorser a holder, or in any way affect a party to whom the paper shall be subsequently negotiated. It follows that this note had its first inception when the bank discounted it for the maker, and the finding of the jury to the contrary was without any, even the slightest, *Page 519 
evidence to support it. It is of no legal importance that the $600 note was usurious. The bank was not the holder of that note, and it does not appear that it ever had any connection with it. When the note in suit was negotiated to the bank, it was not a renewal of or substitute for that or any other note, but was an original discount. It may be that if this note should ever come into the hands of Hyde, he could not enforce it on account of the premium which he had received for endorsing; and it would have been the same thing if it had been shown that the present plaintiff purchased it of the bank as the agent for Hyde, or for his benefit. But no facts tending to that conclusion were shown. There may be grounds to conjecture that some such arrangement was made, as it is not a common thing for a bank to dispose of its discounted paper, the parties to which are solvent; but still it is lawful for it to do so. It will not, however, do to advise juries to avoid contracts not shown to be illegal, merely upon conjecture, however plausible the grounds for it may be. I am for affirming the order appealed from, and for rendering judgment absolute against the defendants. The damages are to be assessed according to the rules and practice of the supreme court.
INGRAHAM, J. The history of this transaction, as testified to by the defendant, is, that he was indebted on a note to Hyde, and went to him telling him he wanted to give another note for it; that Hyde said he would do it on the same terms as before, which was 2½ per cent per month; that he afterwards took the note to him, and Hyde put his name on the back of it, and told Schenck to take it to the bank and get the money. He received from the bank the face of the note, with which he paid the former note. The defendant never paid Hyde anything. The question is, whether this transaction was usurious. If the discount by the bank was for the benefit of Hyde, or by virtue of any *Page 520 
understanding with him, it became a question of fact for the jury to say whether the transaction was intended as a cover for usury, so as to enable Hyde to obtain more than legal interest. The cashier swears there was no such understanding with Hyde as to discounting notes, and he never knew that Hyde had any interest in the note. There was not any evidence, unless the discount by the bank was for the benefit of Hyde, to show that Hyde ever held the note, or had any interest in it. The fact that Hyde was paid for his endorsement could not affect the note. If the payment to him to put his name on the back of the note could be considered usurious, it could not be carried back so as to render Schenck's liability on the note void, until the note became the property of Hyde. Upon this point the charge was full, and submitted the question to the jury. The plaintiff objected to submitting to them the question whether Hyde had any interest in the note. The general term concurred in this view of the case, and granted a new trial upon the ground that there was no evidence that Hyde ever had the title to the note in controversy.
It must be conceded, if Hyde made no advance upon the note, and had no interest in it, or in the proceeds, that his charge for the endorsement would not make it usurious in the hands of any person who received it from the maker and paid value for it. This was decided expressly in Barber v. Ketchum (7 Hill, 444), and differs from the transaction in Schermerhorn v. Talman (14 N YR. 93), where the parties exchanged securities at a difference by which one was to receive more than he gave. In that case, DENIO, Ch. J., says: "There is no difference, in principle, between a case where the security advanced by the lender is for a less nominal amount than the borrower's undertaking for repayment, and this case where the difference is produced by an adjustment of the rate of interest."
A stronger case than the present to make out usury was that ofVan Duzer v. Howe. (21 N.Y. 531.) There the *Page 521 
maker paid $50 to an accommodation endorser for his endorsement and procuring the discount of the paper. DENIO, J., says: "There is no pretense in the evidence for the allegation of usury. The inquiry is, in whose hands it first became available in a sense which would enable that party to maintain an action upon it against the prior parties. One who endorses for the accommodation of a prior party does not thereby become the holder of the bill, nor can he maintain an action upon it, until he has taken it up by paying the amount to a subsequent purchaser." I need only to refer to various cases referred to in that case by Judge Denio, to show that this note is not within the decisions that would make it usurious.
There never was a time when Hyde could have maintained an action upon this note. He had not the possession of it and it had no vitality until the maker passed it to the bank. Even after the bank discounted it, the maker had the proceeds at his disposal and he could apply them to such purpose as he saw fit.
In the case last referred to, the judge submitted the question to the jury, but it was said in the opinion of the court "I doubt whether the evidence would have justified the submission." In the present case the evidence that Hyde had nothing to do with the discount, never controlled the proceeds from the bank, and never made any advances upon the note, are uncontradicted. The jury could not disregard that evidence, and there was in reality no disputed question to submit.
If in such a case as this, where the maker of a note having it in his possession applies to an innocent party to discount it, and receives from him the face of the paper, the maker may afterwards set up a defense of usury founded on a transaction between him and an accommodation endorser, there can be no safety in discounting negotiable paper. On the contrary, where the maker of a note thus *Page 522 
presents his own paper for discount, he should be estopped from setting up any defense of such a character.
The order of the general term was proper, and should be affirmed, and judgment absolute should be rendered for the plaintiff.
SELDEN, J., was absent. All the other judges being for affirmance, judgment affirmed. *Page 523