## JAMES BIRKS v. H. C. FRENCH.

1. PARTNERSHIP; *Sale of Property by One of Firm; Title of Purchaser; Notice.* L., W. & B. were partners dealing in cattle. L., on behalf of the firm, sold some eighty head to F., who knew of the partnership, and had had dealings with it. B. claimed to have purchased the cattle from his firm some months prior to the sale to F. *Held,* That if there was no change in the possession or control of the cattle at the time of B.'s purchase, and if F., without any knowledge of such prior purchase, or of any facts calculated to arouse suspicion and put him on inquiry, and finding the cattle in the possession of the firm, bought in good faith for a valuable consideration, and in the ordinary course of business, his title would be good against B., and that, notwithstanding the latter's purchase was also in good faith, and for a valuable consideration. Such a case is determined by the laws of partnership, rather than by the provision of the statute of frauds.

2. REPLEVIN; *Maintainable in Case Stated.* Subsequently to the time of B.'s purchase, but prior to that of F.'s, L., on behalf of the firm, turned the cattle over to T. under a feeding contract, by the terms of which the latter was to take the cattle to a certain place, and there feed them until the succeeding July; that then the cattle were to be sold, a certain sum to be paid to the firm, and the balance, if any, divided between the firm and T., and that T. was not to remove or dispose of the cattle without the consent of the firm. This contract was assigned by L., for the firm, to F., at the time of his purchase. Subsequently, but before July, B. took the cattle from T. under a writ of replevin. Thereafter, he settled with T., paying him his charges for feeding, and the latter sold his interest in the cattle. After this, F. brought this action against B. to recover the possession of the cattle. *Held,* That F. could maintain the action, and was entitled to the possession, and that any adverse rights of possession created by the feeding contract were destroyed by the transactions between B. and T.

3. CONTRACT *Made on Sunday, Valid.* A contract to sell cattle is valid, though made on Sunday.

### *Error from Wilson District Court.*

REPLEVIN, brought by *French* against *Birks,* to recover eighty-one head of cattle. The district court, at September Term, 1876, gave judgment in favor of plaintiff, and *Birks,* defendant, brings the case here. The opinion contains a sufficient statement of the facts.

*Kirkpatrick & Birge*, and *C. N. Sterry*, for plaintiff in error.
*Cates & Keplinger*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: The facts in this case as disclosed by the record are in substance as follows:

Sometime in the spring of the year 1875, L. N. Lyman, James T. Wright and James Birks formed a partnership for the purpose of buying and selling stock, under the firm-name of Lyman, Wright & Birks. The cattle in dispute in this action were purchased by said firm during the summer of 1875. On the 18th day of November, 1875, L. N. Lyman, on behalf of said firm, entered into a written contract with two parties by the names of Judson Brigham and Joseph Torpin. By the terms of the contract Brigham and Torpin were to take the cattle into their possession and full feed them until the 1st day of July, 1876, at which time they were to be sold, and out of the proceeds Lyman, Wright & Birks were to receive $2,384.02, and the balance to be equally divided. Whatever the proceeds of the cattle, L. W. & B. were to receive the said sum of $2,384.02, and B. & T. promised to make good that amount. The cattle were to be kept and fed in the neighborhood of Dry creek, in Wilson county. B. & T. were not to dispose or remove any of the cattle without the consent of L., W. & B. The cattle were delivered to said Brigham and Torpin under this contract at the time of its execution. On or about the 7th day of February, 1876, L. N. Lyman, on behalf of the firm, conveyed the interest of the partnership in the cattle to H. C. French, defendant in error, in consideration of $2,551.50; and delivered him a bill of sale therefor; and also assigned French the contract executed by Brigham and Torpin. On the 24th day of March, A. D. 1876, James Birks, the plaintiff in error, commenced an action of replevin in the district court for Wilson county against Judson Brigham, who at the time had the cattle in his possession for himself and Torpin, to

recover the possession of said cattle, claiming that he had purchased the cattle of the partnership of Lyman, Wright & Birks some time prior to the time the contract with Brigham and Torpin was entered into with L. N. Lyman. And on the same day the sheriff of Wilson county took possession of the cattle by virtue of an order of delivery in the replevin action, and after holding the cattle for the space of twenty-four hours, he delivered the same to James Birks, plaintiff in error. Within about one half-hour after the cattle were delivered to Birks by the sheriff, H. C. French, the defendant in error, commenced this action against Birks alleging title in himself, right to the immediate possession and wrongful detention on the part of Birks. Birks filed a general denial. The cause was tried at the May term, 1876, of the court, the jury failing to agree upon a verdict. A second trial was had at the September term, 1876, of the court. Verdict and judgment for the plaintiff, defendant in error; and the defendant Birks, plaintiff in error, brings the case to this court on petition in error.

A great many questions are discussed by counsel in their briefs, with fullness and care. Perhaps as fundamental as any is, as to the effect of the alleged purchase of the cattle by Birks, one of the partners in the firm of L., W. & B., from his firm, prior to the time of the sale to French. In reference to this sale, all three partners testified, that in September, 1875, there was some negotiation had between them relative to a sale to Birks; and two of them, Wright and Birks, that such negotiations were completed and the sale consummated; while Lyman asserted that the proposed sale was conditional upon Birks paying a certain amount of money within two weeks, and never consummated by reason of Birks's failure to make such payment. The testimony was conflicting, also, as to any change in the possession of the cattle, or in the manner in which they were held. Involved in this was the authority of Lyman to act for the firm in the feeding contract with Brigham and Torpin. Upon these facts, defendant asked the court to instruct the jury that if

defendant, prior to the purchase by plaintiff from Lyman, in good faith and for a valuable consideration, purchased the cattle from the firm of which he was a member, then they must find for defendant. This instruction the court refused, and instructed the jury, in substance, that though the sale by the firm to one of its members was in good faith and upon sufficient consideration, yet if there was at the time no change in the possession, and plaintiff subsequently, without notice of such prior sale, or of facts sufficient to arouse suspicion and put him upon inquiry, in good faith and for a valuable consideration purchased the cattle of another member of the firm, then plaintiff was entitled to the cattle. Defendant claims that the case falls within the rule asserted in the case of *Wolfley v. Rising*, 8 Kas. 297, that a failure to change the possession will not avoid a sale made in good faith and upon sufficient consideration, even in favor of a subsequent purchaser without notice; while plaintiff insists that such rule does not apply here, but rather the principle that a party purchasing in good faith and in the ordinary course of business from one member of a firm, is protected in such purchase, without regard to any private arrangements between the members of the firm, and also providing he has had no notice of any dissolution, notwithstanding the partnership has in fact been dissolved, and thereby the entire property vested in some other member of the firm. In other words, does the case hinge upon the rule of sales established in the statute of frauds, or is it governed by the ordinary laws of partnership transactions? Is the question one simply of good faith in the prior sale, or of notice of a change in the rights and powers of the several members of the firm? It will be noticed that the statute of frauds does not in terms affirm the validity of any sales, but asserts the invalidity of some, until certain facts are proved. When those facts are proved, the specified objection to their validity is removed. A sale without change of possession is void until shown to have been made in good faith and upon sufficient consideration. The objection specified is a failure to change

16—21 KAS.

the possession. Proving good faith and sufficient consideration removes that objection. But does it follow that all other objections to its validity are removed? Does the proof of good faith and sufficient consideration settle all questions of authority or estoppel? Suppose the prior purchaser, who has never taken possession, sees his vendor making a second sale and does not assert his rights, or suppose he goes further, and assures the second purchaser that he has no claim upon the property: can he thereafter assert title as against such purchaser by proving his purchase to have been made in good faith and upon sufficient consideration? Will not the doctrine of equitable estoppel intervene in behalf of the second purchaser? And can anything further be said in reference to the proof of good faith and sufficient consideration than that it does away with the objection of a failure to change the possession? So, too, we think when a third party deals with one member of a firm in matters within the ordinary scope of the partnership business, other considerations intervene than the simple matter of good faith and sufficient consideration between the partners. A partnership being shown to exist, it is presumed, continues to exist. If any change is made in the partnership, or in its relations to the property belonging to it, notice should be given to those in the habit of dealing with it. This is the general law in relation to partnership, and we think is controlling in this case. A sale by the firm to one partner of any partnership property, certainly, when as here of the bulk of such property, works as to it a dissolution of the partnership. While the partnership may continue for other purposes, including as well the purchase and sale of similar property as anything else, yet as to that particular property it has ceased to exist. The property has been passed outside of the domain of partnership matter and authority. Yet is the authority of any member revoked, as far as customers without notice are concerned, so long as the property remains in the undisturbed possession of the firm?

"Until due notice is given of the dissolution, each partner

will remain liable for the acts and contracts of the others in relation to the partnership, so far as they respect persons who have previously dealt with the firm or have known the names of the partners, or have given credit thereto." (Story on Part., § 162.)

So, too, if some private arrangement be made between partners with respect to the purchase or sale of property, or otherwise, it is not binding upon outsiders in ignorance of it. Full authority is presumed in each partner, and notice must be given of any limitation. Here it is claimed that the authority of two of the partners was revoked by a sale to the third. Was any notice given of any such revocation? By the sale the partnership was, as to this property, terminated. Had plaintiff any knowledge of such termination? Take a simple illustration: Two men are partners in a store; by agreement the stock of goods is sold by the firm to one member; no notice is given of such sale; and thereafter a former customer comes into the store, and seeing the partner who has sold out present, apparently in possession and attending to business, buys a bill of goods. Is not such purchase binding?—and may not the purchaser assert title to the goods? Will the good faith and full consideration of the sale by the firm to the single partner defeat the title acquired by the subsequent purchase in good faith from the other partner? And is not the principle controlling in such case, potent to dispose of this? There is in one view a change in the authority of the partners over the property, and in another view, a dissolution of the partnership as to such property. In either view, notice is essential to a revocation of the power of either partner. We think, therefore, that the court properly ruled, that notwithstanding the prior sale may have been valid *inter partes*, so long as the property remained in the possession and control of the firm, a purchase by one in the habit of dealing with the firm, from either partner in good faith and without notice, would convey the title.

Another matter referred to in the brief is the action of the district court in overruling a demurrer to the evidence. Inasmuch as the defendant, after the demurrer had been

overruled, proceeded to offer testimony and continue the trial, instead of standing on his demurrer, the substantial question before us is, whether upon the entire case the judgment was erroneously rendered, and not whether at the time of the ruling on the demurrer there was a failure of proof of some essential matter. If any omission at that time was covered by subsequent testimony, that would be sufficient. (*Simpson v. Kimberlin,* 12 Kas. 579.) In the argument upon the ruling on the demurrer the question discussed is, as to the effect of the feeding contract with Brigham and Torpin, and it is insisted that plaintiff, to maintain his action, must show not only title, but also the right of possession, and that by the terms of such contract the right of possession was in Brigham and Torpin. Summing up on this question, counsel say:

"To recapitulate: French cannot maintain this action, for the reasons — 1st, The absolute title to the cattle passed to Brigham and Torpin under their contract with Lyman; 2d, If the title did not pass by their purchase, they became bailees of the cattle, coupled with an interest in the same; 3d, They obtained a lien on the cattle which they did not waive; 4th, They became partners with French, or, at least, joint owners in the cattle."

Before the case finally went to the jury, this fact appeared in evidence. After Birks had commenced his action of replevin and before French commenced his, Birks paid to Brigham $908. In reference to this Brigham testified that, "Birks told me that rather than have trouble with me, he would pay me for wintering, if we could agree upon the price. I told him I would take $908, which he paid me, and I sold him for that my interest in said cattle." There was no different testimony as to this transaction. It is plain, then, that at the time French commenced his action Brigham and Torpin had ceased to have any rights of possession or otherwise in the cattle. And it may also be conceded that by the terms of their feeding contract, they were bailees with a lien and right of possession until July 1st, providing they on their part violated none of the terms of the contract. Upon these

facts the defendant asked the court to instruct that, although plaintiff's title might be good by virtue of his purchase, he had not the right of possession, and therefore the verdict must be in favor of the defendant. This the court refused, and charged the jury that, if Brigham and Torpin voluntarily gave up the possession of the cattle, or when taken from them without their consent, made no demand for their return, or complaint of their removal, when they had ample opportunity and declined to take legal means to recover them, then such change of possession was for the benefit of the owner, and he was entitled to the possession as against them. Counsel complain of this charge as ambiguous, erroneous in principle, and misleading. Whatever force there may be in this criticism or any part of it, we think the court rightly refused the instructions asked by defendant, and the jury rightly found for the plaintiff upon this branch of the testimony. All the interest which Brigham and Torpin ever had in the cattle was that of an agister in the cattle which they were feeding, and the right to retain possession until that feeding was paid for. The moment they received full payment for that feeding their interest and right of possession ceased. When Birks commenced his action their right of possession was good, and neither Birks nor French nor anyone else was entitled to the possession as against them. They could have made a successful defense against Birks's action. But they preferred to receive pay for the feeding, and thereby waived all claims they had to the possession or other rights in the cattle. From that moment the contract was dead as to them, and they could no longer found any rights upon it. Neither can Birks invoke the aid of this contract to sustain his possession. It is unnecessary to inquire what would have been the rights of the various parties if Birks had not paid for the feeding, but had simply taken possession by his action of replevin. The contract would still have remained in force, and might have been an important factor in determining where was the right of possession. It may still have force, but its force tends in a different

direction. Birks, by commencing his action of replevin, in effect sought to repudiate the contract, and deny the rights of possession granted by it. May he upon one day invoke the aid of the courts to repudiate a contract of his firm, and the next ask them to uphold it in his behalf? Again: the contract provided that Brigham and Torpin should have the possession of the cattle, should keep them in the vicinity of Dry creek, and should not dispose of or remove them without the consent of the firm. Now, Birks's payment may be regarded in two lights: first, as the act of the partnership in paying for the feeding, and in thus discharging any lien thereon, in which light it would operate to remove all limitations upon French's title and right of possession; or, secondly, as the act of a stranger to the contract, in which event, as Brigham and Torpin voluntarily received their pay, and thus waived their right of possession and defense to the action, the contract was broken, because they abandoned the duty of keeping and feeding the cattle, and consented to their disposal and removal. The act of the officer in removing the cattle might not have been a breach of the contract, but when they elected to receive the money, and forbore to defend, they ratified his act, and put an end to the contract. The owner of the cattle had a right to insist that they should keep and feed the cattle; it was not a duty they could turn over to any one else. He had a right to insist that they should neither dispose of nor remove the cattle; and while the act of the officer might not be in the first place their act, or one for which they were responsible, yet the settlement with Birks was their act, and operated to ratify and confirm the prior removal by the officer. In whichever light, then, we regard the act of Birks, it destroyed any adverse right of possession arising from the contract. As a partner, his payment discharged the lien and right of possession; as a stranger, his taking possession and removal of the cattle was forbidden by the contract.

These are the two substantial and fundamental questions

in the case, and in their decision we see no error. Other matters will be briefly noticed.

The contract of sale, though made on Sunday, was valid. Our statute simply prohibits labor on that day. (*Johnson v. Brown*, 13 Kas. 529; *Bloom v. Richards*, 2 Ohio St. 387.) The testimony, however, seems to indicate that the sale was not finally consummated on Sunday, but still we think the question entirely immaterial.

So far as respects the question of the application of partnership funds to the separate private account of one partner, the instructions of the court seem to have been full and explicit; and the testimony seems to show that while Lyman's account with French was in his own name, it was really a partnership account, and simply kept in his name for convenience.

So far as the various errors alleged in the admission or rejection of testimony are concerned, it is enough to say that the rulings were correct, or the errors not of sufficient moment to justify a reversal of the judgment.

The judgment will be affirmed.

All the Justices concurring.