FARTHING v. ROCHELLE.

(Filed December 18, 1902.)

1. EVIDENCE—*Parol—Description—Boundaries—Specific Performance.*

In an action for the specific performance of a contract for the sale of land, parol evidence is not admissible to identify the land where it is described in the contract to convey as "your lot."

2. EVIDENCE—*Boundaries—Specific Performance.*

In an action for the specific performance of a contract for the sale of land, evidence of former negotiations, or of a subsequent deed, is not competent to locate land described in the contract if the contract does not refer to those transactions.

3. SPECIFIC PERFORMANCE—*Married Women.*

In an action for the specific performance of a contract to sell land, if the vendee knew at the time of the making of the contract that the vendor was a married man, he can not refuse to take the title because the wife refuses to join in the deed.

ACTION by G. C. Farthing and another against C. W. Rochelle, heard by Judge *T. J. Shaw* and a jury, at September Term, 1901, of the Superior Court of DURHAM County.

This is an action for the specific performance of a contract for the sale of land. It is based upon the following correspondence:

*Exhibit "A."*

"March 6, 1901.

"To C. W. Rochelle, Reidsville, N. C.

"I will give you two thousand dollars for your lot, if accepted to-night.          (Signed)      G. C. FARTHING."

*Exhibit "B."*

"8.10 a. m., March 7, 1901.

"Reidsville, N. C.
    "G. C. Farthing:    Will accept your offer.
                "(Signed)    C. W. ROCHELLE."

*Exhibit "C."*

"Reidsville, N. C., March 7, 1901.

"Mr. Farthing:—In reply to your message last night, I did not make my reply complete. It should have read thus: 'Your offer accepted, if not already sold.' Brady, the Jew, has offered Elliott $2,000, and I wrote Elliott the first of this month to close a deal with him. So, if he had made a deal previous to last night at 9 o'clock, I will have to call in the acceptance of your offer. See Mr. Elliott, please, and see if he has made or closed the deal with Brady. I was so excited over the announcement of a telegram for me delivered at my residence, and after I had retired, too, that I could not collect myself sufficient to put the reply in proper shape. The cause of my becoming so wrought up over it was, that my mother has been very sick for the past three weeks, and I was sure it was a message announcing her death, or that she was dying.

"So you can imagine how I felt, and if Elliott has made a deal with Brady before 9 o'clock last night, I hope you will pardon me for the incomplete message sent you, and not think hard of me for this incomplete message or reply, but, on the other hand, if the deal referred to has not been made, let me hear from you, and I will fix up deed and send you in a short time.

"Yours respectfully,
            "(Signed)    C. W. ROCHELLE."

*Exhibit "F."*

"Durham, N. C., March 12, 1901.

"Mr. C. W. Rochelle, Reidsville, N. C.

"Dear Sir:—Yours of the 11th inst. to hand, in which you say for me to suggest a way for you to make me a lawful deed and you will sign it, although your wife still refuses to sign it. So, in compliance with your request, I will suggest for you to make a deed in regular form and sign it before the Clerk of the Court and have his seal attached, and forward same to me, or A. J. Draughan, and I will pay you two-thirds of $2,000, or $1,333.33, and will deposit one-third, or $666.67, in either of our banks, subject to your wife's order when she assigns the deed, or at her death. I know she can dower one-third of same, and no more. Trusting this will be entirely satisfactory to you, and that you will follow my suggestion at once, I am,

"Yours trulty,          (Signed)   G. C. FARTHING."

The following is the charge of the Judge, as set out in the record:

"His Honor, after explaining the nature of the action as set out in the pleadings, and after reading his notes of the evidence, charged the jury, among other things, as follows:

"If you believe the evidence, you will find that plaintiff Farthing sent to the defendant the telegram of March 6, and that the defendant sent to the plaintiff Farthing the reply dated March 7. The two telegrams do not sufficiently describe the property to admit parol evidence to identify the land.

"(To which charge plaintiffs excepted; exception 6.)

"The Court likewise charged that if the plaintiffs have not shown by a preponderance of the evidence that A. G. Elliott was the Elliott referred to in the letter of March 7, the jury will answer the first issue 'No.'

"(To which charge plaintiffs excepted; exception 7.)

"The Court likewise charged the jury that the acts and declarations of A. G. Elliott in relation to the property in dispute, could not be considered by the jury as bearing upon the question of his being an agent of the defendant. But if the jury found from the evidence in this case, other than the acts and declarations of A. G. Elliott, that said A. G. Elliott was the agent of the defendant, then they would have a right to consider, and should consider, his acts and declarations as evidence in determining their answer to the issues.

"(To which the plaintiffs excepted; exception 8.)

"The plaintiffs requested his Honor to charge the jury as follows:

"1. If you believe the evidence, you will answer the second issue 'No.'

"2. If you believe the evidence, you will answer the third issue 'Yes.'

"3. There is no evidence that the plaintiffs defrauded or overreached defendant in the transaction about the lot, and will answer the second issue 'No.'

"4. If you believe the evidence, you will answer the first issue 'Yes.'

"The Court gave Nos. 1 and 3, and refused Nos. 2 and 4, and plaintiffs excepted to the refusal to give No. 4. (Exception 9.)"

The issues were as follows:

"1. Did defendant enter into a contract with plaintiff to sell and convey to him a lot of land in Durham, described in the complaint, as therein alleged? Ans.: 'No.'

"2. Would the specific enforcement of said contract be oppressive? Ans.: .....

"3. Are the plaintiffs now, and have they always been, able, ready and willing to perform their part of the contract, as alleged? Ans.: ...."

The judgment was in accordance with the verdict.    There were exceptions to the exclusion of evidence.    The plaintiffs appealed from the judgment rendered.

*Winston & Fuller,* and *Boone, Bryant & Biggs,* for the plaintiffs.

*Manning & Foushee,* for the defendant.

DOUGLAS, J., after stating the facts.    We see no error in the trial of the action, either in the charge of the Court or its refusal to charge, or in the exclusion of evidence.    The description of the land in the telegraphic offer was simply, "Your lot," which may have been situated either in Durham or Reidsville, or in or out of the State of North Carolina. It is not even stated that there is a house on it.    It seems that the farthest that this Court has gone in admitting a skeleton description of land is in *Carson v. Ray,* 52 N. C., 609, where the land was described as follows: "My house and lot in the town of Jefferson, in Ashe County, North Carolina."    It was shown that the grantor owned but one house and lot in said town.    In the case at bar, there are no words of location, either in the offer or acceptance, while it appears from the tax books introduced by the plaintiffs, that the defendant owned three different lots of land located in or near the city of Durham.    What he owned elsewhere does not appear. The charge was therefore correct that "the two telegrams do not sufficiently describe the property to admit parol evidence to identify the land."    *Murdoch v. Anderson,* 57 N. C., 77; *Fortescue v. Crawford,* 105 N. C., 29.    It seems that this part of the charge referred to the telegrams taken by themselves, and that his Honor left to the jury the question of the identity of the land as affected by the other testimony.    The jury found for the defendant, but we gravely doubt whether it would have been legally possible to locate the land under

any testimony. It seems to us that the Act of 1891, Chap. 465, did not intend to do away with the necessity of all description, and thus practically nullify the statute of frauds, but simply such particularity of description as would frequently be beyond the immediate reach of the ordinary vendor. There must be some form of description to which the evidence can be directed, and by which it can be fitted to the land. We see nothing in the pleadings to cure the invalidity of the contract.

The evidence of former negotiations, in no way connected with the present transaction, is not admissible as evidence to locate the land. The same objection applies to the defendant's deed to Brady, made after the commencement of the suit, and in which no reference is made to this litigation. This deed conveys two lots. Whatever may have been its materiality as to the other issues, was avoided by the verdict of the jury upon the first issue, which would seem to end the case.

We may add that the Court properly refused to give the plaintiffs' second request for instructions. It is admitted by the plaintiffs that the defendant, at the time of the alleged contract, was a married man; that the plaintiffs knew this, and that the defendant's wife is still living, and refused and still refuses to join in a conveyance of this property to the plaintiffs. The plaintiffs, therefore, knew at the time what interest in the land the defendant had the legal power to convey, and can demand no more, even if the telegrams constituted a binding contract. *Fortune v. Watkins,* 94 N. C., 304.

We can only add that the circumstances under which the offer was made, as disclosed by the plaintiffs' testimony, do not appeal very strongly to the conscience of the Court. The judgment is

Affirmed.