CITY OF ASHEVILLE v. H. L. NETTLES.

(Filed 10 December, 1913.)

1. Health Laws—Taxation—Cities and Towns—Boards of Health—Dairy Products—Trials—Reasonable Taxation.

A tax authorized to be levied by the health board of a city upon those selling milk products therein of $1 upon each cow kept for the purpose is a license tax and not one upon the property; and when the statute requires that the tax shall be reasonable and applied to the expense of this department, and that the amount received is insufficient for that purpose, the tax will not be held an unreasonable one, without further proof thereof.

2. Same—Business Unprofitable.

The fact that a vendor of milk in a city is a good business man and has lost money in his dairy business for a certain year does not establish as a further fact that his losses occurred by reason of an authorized tax of $1 on each cow for that year ordered by the board of health of the city to be collected, or furnish evidence that the tax was unreasonable when the statute required that it should be reasonable.

3. Health Laws—Taxation—Cities and Towns—Boards of Health—Dairy Products—Reasonable Taxation—Trials—Evidence.

Where the unreasonableness of the tax ordered levied by the board of health of a city on each cow used for producing milk to be sold within its limits is brought in question, and it appears that the taxes thus received are inadequate, and the statute directs they shall be applied to the payment of such expenditures, extravagance of the board of health will not be considered

in an action brought by the city for the penalty for the viola-
tion of its ordinance, the proper remedy being first on applica-
tion to the authorities to remedy the matter, and then, upon
their refusal, and upon proper proceedings, to have the matter
determined in the courts.

4. Health Laws — Taxation — Cities and Towns—Dairy Products—
Sale Within the City—Outside Dairies—Sale to One Person.

Where authority is conferred upon a city board of health to
levy and collect a tax upon each milk cow used for the purpose
of selling milk within its corporate limits, the fact that the cows
are kept on a dairy farm near to the city and their milk sold to
one person within the city, who distributed or sold it therein,
will not avoid the collection of the tax on the cows thus used.

*S. G. Bernard for plaintiff.*
*Wells & Swain for defendant.*

CLARK, C. J.   The charter of Asheville, Private Laws 1901,
ch. 100, sec. 32, prescribes the powers and duties of the board of
health of that city, and among other things provides: "Said
joint board shall have authority, and power is hereby expressly
given it, to prescribe and adopt rules and regulations governing
and controlling the *production and marketing* of milk and other
dairy products *sold within said city,* and rules and regulations
for the visitation, examination, inspection, and condemnation
of all premises, stables, cows, milk, and other dairy products,
utensils, and other property and things used in connection with
the production and marketing of milk and other dairy products
sold within said city, and to prescribe and fix fines and penal-
ties for the violation of any of said rules and regulations, and
to license the sale of milk and other dairy products within said
city; and to levy and collect special taxes of reasonable amount
upon persons or corporations offering milk and other dairy
products for sale in said city, for the purpose of defraying the
expense of the examinations and inspections herein author-
ized."

Under authority of the above provision in its charter, the
city adopted Ordinance 521, which provides that "Every per-
son, firm, or corporation, before selling milk or offering it for

ASHEVILLE *v.* NETTLES.

sale, or before conveying milk in carriages or otherwise for the purpose of selling it, or delivering it in said city, shall, annually, before 1 January, procure a license from the joint board of health of the city of Asheville to sell milk within the limits thereof; and a license fee of $1 per cow in the dairy herd shall be paid in advance to the city clerk and by him turned over to the city treasurer"; and further adopted Ordinance 525: "Any firm, corporation, city official, employee, agent, or other person whatsoever violating any of the provisions of any section of this chapter of this code, or failing, neglecting, or refusing to comply with its requirements or acting contrary to the same, where no specific penalty is hereinbefore in said section or in this chapter prescribed, shall be subject to a penalty of $25 for each and every such offense."

In pursuance of the provisions above cited from the charter, the board of health prescribed a very full and careful system of rules and regulations, providing that every producer of milk should have his dairy herd inspected; the tuberculin test applied to all his herd; that the milk men should wear certain kinds of clothing, milk their cows in vessels with tops to prevent dirt falling into the milk; the owners must have concrete floors in their dairies; that the food of the dairy cattle should be inspected; that persons exposed to diseases of a communicable nature should not be allowed around the barn or to handle the milk; that the milk in the wagons should be inspected, and, in short, regulations in accordance with the latest requirements of science to prevent the dissemination of typhoid fever, consumption, and other diseases which are known to be most readily communicated by means of impure milk.

This inspection and the enforcement of these regulations require considerable expenditure, and to defray in part at least the expense thereof the ordinance above set forth requires a license fee of $1 per cow in each dairy herd. It is agreed as a fact in this case that the defendant during the year 1912 was engaged in the dairy business in the county outside of Asheville, and was selling and delivering milk in said city to Brown's

Creamery, who resold it at wholesale and retail in said city, but that the special license tax of $1 per cow required of this defendant was not paid for the year 1912.

It is further agreed as a fact that the city of Asheville employs a chief milk and dairy inspector, and an assistant dairy inspector, and that a part of the salary of a clerk to the health department, whose duty it is to keep all dairy records of inspection, etc., is charged against this account, the total cost thereof amounting to $1,030.23 per annum and that for the year 1912 the total of license fees at $1 per cow to which owners of dairy herds were liable under the terms of said ordinances amounted to $862.

The defendant contends that said tax is invalid, and that if it is not, it is excessive, because it is admitted as a fact in the record that though he is a competent dairyman and good business man, he actually lost money in the dairy business for 1912.

The city is authorized by its charter to prescribe regulations in regard to the sale of milk in order to safeguard the health of its citizens, and is to be commended for the care which it has shown in so doing. It is also authorized by its charter to levy a license tax to provide for the necessary expenditure in making the inspections and enforcing its regulations. Besides, Revisal, 2924, authorizes every city to lay a license tax "on all trades, professions, and franchises carried on and enjoyed within the city, unless otherwise provided by law."

The license tax of $1 per cow is not a tax upon property, but a license tax to provide funds for the expense of supervising the business, and, in the language of the charter above quoted, it seems to be of a reasonable amount, as the aggregate of the license taxes does not equal the cost. The defendant contends that the expenditure by the city is excessive in that it has too many employees, *i. e.*, a chief inspector and an assistant, and part of the salary of the clerk is also charged up. But if this is true, it is not found as a fact in this case, and it is not a matter of law of which we can take notice. It is agreed as a fact that though the defendant is a good business man, he lost money in conducting the dairy business for that year; but it

does not follow as a matter of law that this was due to the requirement of $1 per cow as a license fee. It could not be so, seeing that this prosecution is because he has not paid it.

While license fees in this case are for the purpose of "defraying the expenses of the examinations and inspections herein authorized," and therefore should not exceed a reasonable amount for that purpose, all license taxes authorized by Revisal, 2924, are not so restricted. See cases cited under that section in Pell's Revisal. As to the license tax in this particular instance, which is thus restricted by section 32, chapter 100, Laws 1901, if the costs of the inspections and supervision are extravagant, the parties interested should make complaint to the city authorities, and if not corrected they can upon proper proceedings have the fact determined in an action for that purpose, and the Court will make appropriate orders to correct the evil. If such defense could be set up for the nonpayment of a license fee which is required to be paid in advance it might seriously interfere with the execution of the regulations of the board of health. Such fact is neither alleged, admitted, nor found as a fact in this case.

The defendant upon the facts agreed was engaged in selling milk in the city of Asheville in contemplation of its charter and ordinances. He sold and delivered milk, it is true, to only one customer, Brown's Creamery. But this required the same inspection and regulation of the defendant's herd and of his milk as if he had sold to numerous customers. We find nothing in the statute which restricts the inspection of such dairy herds and milk to those located within the corporate limits. Probably all the herds are, like this, outside of, but near, the corporate limits. Where milk is shipped in from other States or distant points *ex necessitate* the inspection is restricted to the milk when put on sale; but not so when the dairy is located in the same county and in the suburbs or near to the city to which the milk is sent. The object of the law is to give the board of health supervision of the source of milk supply, its production and sale, so far as is practicable, in order to protect the lives and health of its citizens. We can find nothing in this record which

authorizes us to hold as a matter of law that a license tax assessed at the rate of $1 per head upon each cow in a dairy herd is an unreasonable tax.

The judgment that the ordinance and the license tax therein provided for are valid and adjudging the defendant liable to the penalty prescribed for failure to pay the tax is ·

Affirmed.