Ruffin, C. J.
 

 'The conduct of the defendant is contrary to the usages of North Carolina, the general welfare, and likewise to the law of the land. It seems tq us to be very reprehensible; for we perfectly concur in the eloquent pas
 
 *402
 
 sage in the Commentaries, on the propriety and political nc-cessity of keeping one day of the week for the purposes of public worship, relaxation and refreshment. 4B1. 63. The ^nst|tut|onj wherever it has existed, has proved to be a great good, promoting private virtue and happiness among all classes, and the public morals and prosperity. It is, therefore, fit, that every commonwealth, and especially one, in which Christianity is generally professed, should set apart by law a day for those purposes and
 
 enforce
 
 its due observance by such sanctions as may seem adequate. Byastatutein this State, the profanation of Sunday, by working in a person’s ordinary calling, is punished by a pecuniary fine, recoverable by a summary proceeding before a justice of the peace. Rev. Stat. c. 119. s. I. As that statute does not make the ofFence indictable, it is not punishable in that mode, unless it be so at the common law. That we have now to enquire of, since, although we may unite with the great bulk of our fellow citizens in reprobating an act bringing scandal on our own people, and giving so much offence to the most moral and pious among us, we are, nevertheless, not to punish the act, contrary to the law.
 

 The indictment is for compelling certain slaves, belonging to the defendant, to work on several Sundays in the ordinary calling of the defendant on his farm. It lays those acts to be to the common nuisance and concludes at common law.
 

 We do not find it any where stated, that doing secular work on Sunday is
 
 per se
 
 an offence at common law. There is, indeed, in the Crown Circuit Companion a precedent, (which is also adopted in 2Chitty. Cr. L. 20) of an indictment against a butcher as a commo'n Sabbath breaker and profaner of Sunday, for having, within certain times, kept a common public and open shop in a town on Sunday and sold therein meat to divers persons. Mr. East also, speaking of offences against God and religion, remarks, that the profanation of Sunday is by a variety of statutes punishable in particular instances by summary process before magistrates;
 
 *403
 
 and then adds, that “it is also said tobe indictable at the common law.” And he cites the precedent just mentioned. In the precedent the act is laid as a nuisance.; as it is in the indictment before us. There is however, a marked difference between the cases; the work here not being in a town, nor such as in itself is likely to annoy any person, except as .the want of a decent respect for the sentiments of our citizens generally and their sense of religious duty might render it offensive to them, whether they saw it or only heard of it. It was in a rural situation, gathered no crowd, disturbed no body For working on a farm would not seem in itself a molestation to others, more than cooking meals on that day at one’s home or taking a journey either to or from one’s home, the latter being, all, customary acts in all Christian Countries, including our own.
 

 The truth is, that it offends
 
 vs,
 
 not so much because it disturbs us in practising for ourselves the religious duties, or enjoying the salutary repose or recreation, of that day, as that it is in itself a breach of God’s law, and a violation of the party’s own religous duty. But we do not perceive how it can become an offence at common law even when the labor is both openly and publickly performed, as in a town, for example, except upon a process of reasoning of this kind: That the Christian religion isa part of the common law, that it forbids work on Sunday, not only as a sin in itself, !but as a disturbance to others and an injury to the State, and therefore that the law prohibits such profanation and punishes it. But we cannot believe that such a principle was established at the common law. In the first place, the extent of the obligation of the Sabbath under the gospel is a point, on which the professors and teachers of Christianity have been far from agreeing. Some contended for a strict exclusive dedication of Sunday to public worship and private devotion, while others thought it not inconsistent with the duties ofre-ligion, but rather, as promoting their cheerful and hearty discharge to employ a part of the day in sports and pastime, which are commonly deemed innocent. And others, again,
 
 *404
 
 professed to bold, that the fourth commandment was addrcs-ed to the Jews only, and, not being of moral obligation, is now abrogated. It seems, however, to be generally agreed) ^ sjg0r 0£ tjjg Mosaic law, at least according to Pharisaic srictness, was much softened under the Christian dispensation., as well as the day of rest charged. We know, too, that very liberal, perhaps lax, sentiments on this point prevailed among those in authority in Church and State in the ancient days, when the foundations were laid of the common law of England. It would not, then, be likely; that the temporal judges would, without the enactment of Parliament, assume to punish the violation of Sunday, as being a breach of Christian or of religious duty. We should rather expect them to leave that to the censure of the Spiritual Judge, who was charged peculiarly with the office of enjoining on all subjects the duties of religion and obedience to the canons of the Church. Such was the course of both Parliament and of the temporal courts in respect to some acts) which are, at least, as scandalous as that now before us. For example, the act of 1 Car. 1 c. 1, prohibits certain sports on Sunday under pecuniary penalties, and then provides, that the Ecclesiastical jurisdiction shall continue, and those of-fences be punished as if the act had not been made. To this day the crimes of personal impurity have been left to ecclesiastical censure alone; and though all agree that incontinence is opposed both t-o the Christian and Mosaic dispensations neither Parliament has to this day enacted that it shall be punished by the temporal Judge, nor have those Judges ventured to assume the jurisdiction without the authority of Parliament. Although it may be true, that the Christian religion is a part of the common law, it is not so -in the sense that an act contrary to the precepts of our Savi- or or Christian morals, is, necessarily, indictable. Those which are merely against God and religion were left to the correction of conscience, or the religious authorities of the -State, Such, necessarily, must be the character of acts which .are criminal only in respect of the day on which they
 
 *405
 
 are done, being a day set apart by the author of our religion for his peculiar service. As offences against religion merely, they were the subjects of ecclesiastical jurisdiction, unless Parliament interfered and by an act made them the subjects of the jurisdiction of the temporal Judges.
 

 That to some extent would follow from the establishment of a particular religion or church in the State, as it thereby would be criminal to deny and deride the establishment made by law, or its distinguishing doctrines. But we do not find, that, at the common law, the holiness of the Sabbath was held to be one of those doctrines of the established churches, so far as to make its violation a crime by the municipal law. In
 
 Rex
 
 v
 
 Brotherton,
 
 1 Str. 702, it was held upon demurrer, that selling meat on Sunday was not indictable, at the common law. In
 
 Rex
 
 v
 
 Cox,
 
 Bur. 785, an information was moved for, because the defendant, as a magistrate, had refused to receive an information against a baker, who baked pies and puddings on Sunday. But the- Court refused it ; because that sort of baking did not come within the St. 29, Car-. II, c. 7, and it was not pretended, that it was punishable without the Statute. Indeed that statute itself, besides the exception under the general terms, “works of charity or necessity,” expressly provides, that the act shall not extend to the dressing meat in families, nor dressing nor selling meat in inns and cooking shops, nor the crying of milk between certain hours — which shews, that before the act, that is, at common law, those acts were not deemed offences against God and religion or the establishment, or the civil government, so as to be indictable: And if they were not so, why are we to hold that any other labour was, unless it might be such as actually to interfere with the rights of conscience and worship of others, as by disturbing congregations assembled in churches in their devotions, or the like. At all e-p vents it clearly appears therefrom, and' from may other acts of Parliament, that Sunday was not regarded in the law as a Sabbath, to be kept strictly; and that-its violations were to be punished or tolerated according to the Legislative will, as
 
 *406
 
 the sole rule for acting on that day, as a civil duty, and not according to. particular interpretations of Holy Scripture, Beyond the requisitions of the statutes, each person was left tQ jjjjg consjence an(j understanding of the divine law, and the judgment and censure of his spiritual superiors. It is clear, for example, that the making of bargains on Sunday was not a crime against the State. For contracts made on that day are binding. It has been often so ruled in this State, and, after elaborate argument and time to advise, it was, contrary to the inclination of the Court at first. So held by the Court of Common Pleas in
 
 Drury
 
 v
 
 Defontain,
 
 1 Taunt. 130. Now, it would be a solecism, to hold the contract valid, and at the same time to hold that the making of it was, by the common law, against good morals, or religion, and therefore, an indictable crime. In that case several earlier ones were cited, which occurred before the statutes, in which it was held, that open fairs might be held on Sunday by prescription. Consequently, the common law could not have deemed it an offence ; for no' prescription could be good, which involves in its enjoyment a crime. Then our own statute and the numerous statutes, which have been passed in England from that of 27 Hen. 6, prohibiting fairs on Sunday, down to the present times, and various others which punish divers acts of vice and immorality, all under small pecuniary penalties, form a body of evidence, not to be resisted, that, without such legislative authority, the temporal Courts could not punish such acts.
 

 We do not perceive, that laying the act as a common nuisance can vary the result, if,per
 
 se,
 
 the profanation of Sunday be not an offence. If the act of the accused in factdis-turb others in the performing of their duties o( piety, that .will, itself, be a specific offence, whether committed on Sun¡day or any other day. If the particular work or trade be not in its nature a nuisance, as prejudicial to the health or comfort of the public, it does not become so by being performed or carried on on one day, more than another. If the precedent of the indictment against the butcher at common
 
 *407
 
 law can be supported at ail, it must be on the ground', that in England the Christian Religion is established by law, and that, according to its principles, as established, the pro'-fanation of Sunday is criminal. There is reason to doubt, as before said, whether work on Sunday was-held to be contrary to the Christian dispensation, as early held in the English church. But if it was, it became an offence against the State by being contrary to the religion which the Slate had established ; and since the introduction of Christianity into England, or very soon afterwards, there has been no' time, in which it has not been established, as the national religion, in some form, held, for the time being, to be the true religion of Christ. In this state, however, although recognized as an existing, and as the prevalent religion, it is not, and cannot be established by law in any form, nor as consisting of any particular doctrines, or imposing any special duties of worship of of worship at'particular places or periods. Therefore, however clearly the profanation of Sunday might be against the Christian religion, it is not and could not here be made, merely as a' breach of religious duty, an offence
 
 ;■
 
 and' much less can it be held an offence at common law. The Legislature, deeming it,- as it does many other violations of Christian duty, detrimental to the State, may prohibit it, and then it will be punishable to the extent and in the manner pointed out by the Legislature. There are many offences against God, which are not offences against the State. An act is punishable in the temporal courts, not as being prohibited by ecclesiastical authority, or, even by the Divine Bead of the church, but as being forbidden by the civil power of the Slate, r'esi’ding in the Legislature. The Legislature has hitherto thought'the penalties given in the act of 1741, sustained'by public séntimeñt;-adeffii'ate securities for the decent observance of the day. The event' has, upon' the whole, justified that opinion. There are very few examples of such acts as those nf the defendant in this case. For even the few persons, whose own principles, as moral and religious persons, might not have restrained them from the profanation of the day,-have been restrained by a Willingness-
 
 *408
 
 to obey the law, as enacted in the statute of 1741, or by a just respect for the opinions and feelings of their fellow citi-zeas, to whom, as a body, secular labor on Sunday is a scan-jaj anc¡ offence. Probably the very few cases of flagrant violations of this law, and of the customs of our times, and the difficulty of laying down any precise rule on the subject, that might not, on the other hand, be abused and distorted, as the traditions were by the Pharisees, may lead to the conclusion, that no change of the law is called for. But that is with the Legislature. If they think it needful, higher penalties may be laid, or the profanation of Sunday may be prohibited in general terms, and thereby it will become a misdemeanor, and indictable. Until that shall be done, however, the courts can only exact the penalties the Legislature has been pleased already to impose.
 

 Pjsr Ctkiah. Judgment reversed, and
 
 venire de novo.