The plaintiff gave in evidence a paper-writing acknowledging the receipt of the purchase money, and warranting the horse in question to be "sound and healthy," which was dated 8 January, 1849, and witnessed by a subscribing witness. It was proved that the sale of the horse took place on the day preceding that set forth in the writing, to wit, on Sunday, the 7th of that month, when the animal was delivered. There was much evidence tending to show the unsoundness of the (357) property at the time of the sale, all of which, with the instruction of the court on that point, was submitted to the jury without exception. There was evidence that Easley, the defendant, came to the house of the plaintiff's mother on Saturday night, and that the sale took place next morning just after breakfast, also; that the defendant said, in the hearing of the plaintiff, that he was a horse trader. There was no evidence that the plaintiff and defendant were known to each other before the time spoken of.
The defendant's counsel asked the court to instruct the jury that if they should find that the ordinary calling of Easley was that of a horse trader, and the plaintiff knew it, and the horse was sold on Sunday, the plaintiff could not recover.
The court declined giving the instruction asked, and the defendant excepted.
There was a verdict and judgment for the plaintiff, and the defendant appealed.
The defendant sold a horse to the plaintiff with a warranty of soundness which was false. The sale was made on Sunday, in the country, no one being present except the parties and a witness. The defendant was a horse trader, which was known to the plaintiff. The question is, Can the defendant defend the action because the sale was on Sunday? *Page 277 
The defense was put on the statute, Rev. Statutes, ch. 118, sec. 1: "That all and every person and persons whatsoever shall, on the Lord's day, commonly called Sunday, carefully apply themselves to the duties of religion and piety, and that no tradesman, artificer, planter, laborer, or other person whatsoever shall, upon the land or water, do or exercise any labor, business, or work of their ordinary callings (works of necessity and charity only excepted) on the Lord's day aforesaid or any part thereof, on pain that every person so offending, being of the age of 14 years and upwards, shall forfeit and pay the sum of $1." This statute is taken from 29 Car. II., ch. 2, sec. 1, which was (358) enacted in this colony in 1741, and reenacted after the adoption of the Constitution. My opinion is that the defense cannot be supported, and I put it on two grounds:
I do not believe the plaintiff comes within the operation of the statute. Buying horses was not his "ordinary calling," so the statute does not prohibit him from doing so, or impose any penalty upon him.
I admit that if a shop is kept open on Sunday, or goods are sold at auction, the price cannot be recovered. I also admit, for the sake of the argument on this view of the case, that the defendant could not maintain an action for the price of the horse. It is said the plaintiff knew the defendant was a horse trader and concurred in his violation of the statute, and consequently was particeps criminis. Does this consequence follow? In crimes there are accessories; in misdemeanors, all who aid or concur are held to be equally guilty, and are subject to like punishment with the party who commits the offense. This plaintiff is not guilty of violating the law, and is not subject to a penalty, so he cannot be partecepscriminis in the legal sense of the terms. He is not in pari delicto, and it is against the policy of the law, and will defeat its object so to consider him. The Court will not aid any person who violates the law; therefore, the defendant could not maintain an action. This rule is adopted on the ground of policy, for the purpose of preventing a violation of the law, and if confined in its operation to the actual offender its application will be salutary, but if it be extended to the party who is not an offender, so far from checking, it will encourage a violation of it, by letting it be known to "horse traders," "shopkeepers," and "all whom it may concern," that they may cheat with impunity, provided, always, it may be done on the Lord'sday!! They will readily purchase "this indulgence and dispensation" by paying "one dollar," if it should be sued for.
If it be said this will prevent people from trading with them, (359) the reply is, that is not the object of the statute, but to prevent "tradesmen," "artificers," etc., from exercising their ordinary callings on Sunday, etc., so this action of the court shifts the operation *Page 278 
and fixes the burden on those not included, to the encouragement of those who are included in the prohibition, and upon whom, alone, the penalty is imposed.
Our attention was called in the argument to a remark of Bailey, J., inBloxome v. Williams, 3 Barn. Cres., 232 (10 E. C. L., 60). In that case the plaintiff did not know that the defendant was a horse-dealer, and it is held that he could recover, and the learned judge incidentally says: "If the plaintiff had known the defendant was a horse-dealer, such knowledge of the illegality of the contract would have prevented him from maintaining the action." This was a mere dictum, not even called for in aid of the argument. I cannot suppose that the learned judge took time to consider of it, for he overlooks the fact that the prohibition and the penalty apply to the defendant only.
In the second place, I do not believe a contract like that under consideration comes within the operation of the statute. A contract made on Sunday may be enforced by an action at common law. This is settled, Drury v. Defontaine, 1 Taunton, 130, in which it is decided that one whose ordinary calling was to sell horses at auction may recover the price of a horse sold on Sunday at private sale. The ordinary calling of the defendant was to sell horses at private sale, and I admit that this case comes within the words of the statute, although the sale was made in the country, where no one was present except the parties and the witness. So the case of a lawyer who sits in his room and reads a law book or writes a deed, or a merchant who in his counting-room posts his books, or an old lady who sits by her fireside and knits, if done on Sunday, comes within the words of the statute. But my opinion is that the statute is void and inoperative in respect to cases of this kind, and that its operation is confined to manual, visible, or noisy labor, such as is calculated to disturb other people; for (360) example, keeping an open shop or working at a blacksmith's anvil, or crying an auction in a town. The Legislature has power to prohibit labor of this kind on Sunday, on the ground of public decency and to prevent public devotion from being disturbed, in the same way as the exhibition of animals or the sale of spirituous liquors within a certain distance of a religious assembly is prohibited. But when it goes further, and, on the ground of forcing all persons to observe the Lord's day and carefully apply themselves to the duties ofreligion and piety on that day, prohibits labor which is done in private, and which does not offend public decency or disturb the religious devotions of others, the power is exceeded, and the statute is void for the excess, by force of the Declaration of Rights, sec. 19: "All men have a natural and unalienable right to worship Almighty God according to the dictates of their own consciences." Ours is a Christian country, but *Page 279 
Christianity is not established by law, and the genius of our free institutions requires that Church and State should be kept separate. In England religion is established by law. The head of the Church is the head of the State, and the statute 29 Car. II. has full force and effect. Here, there is a different condition of things, and only such part of the statute as is necessary to enforce public decency is of force and effect. In Fennell v. Ridler, 5 Barn. Cres., 406 (11 E. C. L., 261), the case of a private sale by a horse-dealer on Sunday is held to be within the operation of the statute, on the express ground that "the spirit of the act is to advance the interest of religion — to turn a man's thoughts from his worldly concerns and to direct them to the duties of piety and religion, and the act cannot be construed according to its spirit unless it is so construed as to check the course of worldly traffic." This is the language of Bayley, J., who, in Bloxome v. Williams, supra, expressed a doubt whether the statute applies to a bargain of this description, and inclined to think "that it applies only to manual labor and other work visibly laborious, and the keeping of open shops." This was while he was under the impression that the intention of the act was to promote "public decency"; but afterwards, in Fenner v.Ridler, supra, upon further consideration, he expressed himself (361) satisfied that "There is nothing in the act to show that it was passed exclusively for promoting public decency, and not for regulatingprivate conduct. Labor may be private and not meet the public eye, and so not offend against public decency, but it is equally labor, and equally interfers with a man's religious duties." So these two cases establish the position that considering the act as passed exclusively for promoting public decency, the case of a private sale would not come within its operation, and it was only be extending its object to the regulation of private conduct, and the enforcement of religious duties, that such a sale was brought within its operation. It follows that a private sale is not within operation of the statute, so far as it can be allowed force and effect.
The cases cited from the New England States have no bearing. Their statutes prohibit all secular labor on the Sabbath, and the notions there entertained are far more strict and intolerant than the sentiments that have heretofore prevailed in this State.
The general one of S. v. Williams, 26 N.C. 400, and Shaw v. Moore,26 N.C. 25, fully accords with this conclusion. In my opinion there is no error.