STATE AND CITY OF CHARLOTTE v. H. D. KIRKPATRICK.

(Filed 28 April, 1920.)

1. **Health—Statutes—Cities and Towns—Ordinances—Sale of Milk—License—Monopolies—Appeal—Constitutional Law.**

    An ordinance of a city authorized by statute, requiring a license from those having dairies either within or without the city limits and selling milk therein, is not objectionable as tending to create a monopoly by a provision that it may be suspended or revoked for cause, or that no provision has been made for an appeal from the health authorities, the action of the authorities not being arbitrary and the question capable of being raised, in appropriate instances, by indictment, or by an application for mandamus, or by an action for damages.

2. **Health— Statutes— Legislative Discretion— Cities and Towns— Ordinances—Courts.**

    The reasonableness or unreasonableness of an ordinance passed under the express provision of a valid statute, requiring a license from the sellers of milk within the corporate limits of a city, may not be inquired into by the courts, this question being solely within the discretion of the Legislature.

3. **Health—Milk—Statutes—Ordinances—Cities and Towns—License—Discrimination—Constitutional Law.**

    An ordinance requiring those selling milk within the corporate limits of a town, to obtain a license from its health authorities, with provision that it should not prevent the owner of two cows from disposing of his surplus milk if not peddled or vended, precludes the meaning that such

owners may sell or come in competition with those of whom the license is required, and is not objectionable as an unlawful discrimination.

**4. Health—Mandamus—Milk—License—Revocation—Orders in Force.**

In proceedings in mandamus to compel municipal authorities to issue a license for the sale of milk within the city limits, which had been revoked by the city authorities under a power contained in an ordinance authorized by statute, the order revoking the license will remain in force in order that unsanitary milk may not be sold pending the legal investigation.

APPEAL by defendant from *Shaw, J.,* at September Term, 1919, of MECKLENBURG.

The defendant was convicted of selling milk within the city limits of Charlotte without having first obtained a permit from the health authorities of said city, and was fined $5 and costs, and appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Clarkson, Taliaferro & Clarkson, Cansler & Cansler, Stewart & McRae, and T. L. Kirkpatrick for defendant.*

CLARK, C. J. The appeal raises the question of the validity of the ordinance of the city of Charlotte, sec. 116, subsec. 2, which provides: "No person, firm, or corporation shall engage in the sale, handling, or distribution or production of milk for sale in the city of Charlotte, nor shall any person ship any milk into the city of Charlotte until he has obtained a permit therefor from the health authorities of said city. This permit shall be renewed on or before the first day of July in each year, and may be suspended or revoked at any time for cause. Each person applying for a permit shall pay to the city tax collector the sum of $1 for each renewal thereof," and specifies what the application for the permit shall include.

It is admitted by the defendant that within two years prior to the issuing of the warrant he was engaged in the business of selling milk in the city of Charlotte, and that he did so without having obtained the permit required by said ordinance, and that the dairy operated by the defendant from which milk was so furnished and delivered in Charlotte was located without the proper limits of the city, and that the defendant had more than two cows in his dairy. On the facts admitted the defendant moved for a nonsuit, which was denied, and the Court instructed the jury that if they believed the evidence to return a verdict of guilty, and they so found.

The legislative authority for the enactment of the ordinance in question is found in subsecs. 10 and 12 of sec. 57, ch. 276, Pr. Laws 1915

(the charter of Charlotte), and is as follows: "The board of aldermen shall have power and authority, by ordinance duly enacted:

"(10) To provide for inspection of all dairies inside and outside of the city limits, doing business within the city, and to regulate and maintain a standard for milk sold in the city; to provide for and regulate the inspection of all foodstuffs offered for sale in the city of Charlotte, and to impose license fees on all persons engaged in any of said business."

"(12) To require any owner or occupant of a dairy, grocery, meat, fish, or other market place, any restaurant or eating place, any blacksmith shop, slaughtering house or stable, to cleanse or operate same in such manner as may be necessary for the health, comfort, and convenience of the inhabitants."

In the growing intelligence of the age, we have learned that there are few matters as important to the public welfare as the public health, as to which we are truly "our brother's keeper," for if by neglect disease is allowed to prevail among any class of people, however small or obscure, the entire community may become infected, and that proper preventatives cannot be efficiently administered except by government or municipal control, which reaches all sections and all classes. Such legislation was formerly unknown when population was sparse, the people poor, and knowledge of public hygiene almost entirely lacking. We now know that prevention is far more efficient than the attempt to cure, and official supervision, formerly unknown, is now deemed a necessary element in government, National, State, or municipal, and legislation authorizing regulation is now universally held constitutional.

An ordinance very similar to this was sustained in *Asheville v. Nettles,* 164 N. C., 315. In that case the ordinance, which was as detailed, as in this, went further, for it measured the amount of the license by the number of cows in each dairy, taxing them $1 a head. The ordinance in this case requires the payment of only $1 for the permit, the permit to be renewed on or before 1 July each year.

The defendant attacks the validity of the ordinance on three grounds:

"1. That it tends to create a monopoly through the power of revocation of permit vested in the city health authorities." This permit is to be obtained from the health authorities of Charlotte, and "it may be suspended or revoked at any time *for cause.*" Neither the statute, nor the ordinance, permits the revocation of these permits arbitrarily, but only for cause. This necessarily involves a trial whether the question is presented by indictment of the defendant for selling without license, or by application for *mandamus* or by an action for damages, though necessarily the order revoking the license, or refusing to renew it, must remain in force in order that insanitary milk may not be sold pending

STATE *v.* KIRKPATRICK.

the legal investigation. If, on such trial, it is found that the revocation or refusal to grant the license was arbitrary and unjustified, the court would grant a *mandamus* for the issuance of the license, and the applicant would doubtless recover damages for injury to his business.

The defendant does not complain of any particular feature of the ordinance, for it nowhere appears in the record that he ever applied for a license, and it is not alleged that it was arbitrarily refused him. Nor is there any allegation or evidence that the ordinance was unreasonable. In *Lawrence v. Nissen,* 173 N. C., 359, it is said: "If passed by virtue of express power, an ordinance cannot be set aside for mere unreasonableness, since questions as to the wisdom and expediency of a regulation rest alone with the law-making power."

2. The defendant contends that the ordinance is invalid because it contains "no provision for appeal from the action of the health authorities."

If there was such arbitrary action it could be shown as a defense on an indictment or as ground for a *mandamus* to require the license to be issued, or in an action for damages whichever should be appropriate upon the facts, and an appeal would lie from the judgment. The ordinance on its face is valid, and the defendant has no ground of complaint for arbitrary conduct of the health authorities for he has refused to apply for a permit and has sold milk in Charlotte without a license. He has taken the law in his own hands and adjudged that the ordinance is invalid or that, for some reason which is not stated, he is exempt from its authority.

3. The contention of the defendant seems to be rested principally upon the ground that secs. 6 and 7 of the ordinance are discriminatory. Sec. 6 is as follows: *"Effect on owner of two cows.* Nothing in this ordinance shall be construed to prevent the owner of two cows from disposing of his surplus milk, provided such milk is not peddled or vended." Sec. 7 provides that a violation of the ordinance subjects the party to a penalty of $10 for each violation (but this section shall not apply to any person or persons owning not more than two cows), and each day that any violation is allowed to continue shall constitute and be a separate and distinct offense." The defendant's chief contention, therefore, seems to be that the exemption of a person engaged in the business, if he owns less than two cows, makes the ordinance invalid, but it will be seen that it does not exempt the owner of two cows "if the milk is peddled or vended." The intention evidently was that where a party owned only two cows it should be admissible for him to dispose of the surplus milk by giving it away or otherwise "provided such milk is not peddled or vended"; that is, its disposition is not brought in competition with those who sell milk.

In *Lawrence v. Nissen,* 173 N. C., 359, the Court said: "The discriminations which are open to objection are those where persons engaged in the same business are subjected to different restrictions or are held entitled to different privileges *under the same conditions.*"

There is no evidence here to justify any contention that the ordinance is not within the scope of the authority constitutionally conferred by the Legislature, or that by its terms the ordinance is unreasonable. The contention is that it is discriminatory, but we do not find that in this instance there has been an unreasonable and illegal discrimination.

In *S. v. Medlin,* 170 N. C., 682, it was held that under Rev., 2923, an ordinance "which prohibited the opening of all places of business on Sunday except drug stores, and permitting them to sell *quasi*-necessities, such as mineral waters, soft drinks, cigars, and tobacco only during certain hours of the day was not invalid." In *S. v. Davis,* 171 N. C., 809, it was held that "an ordinance imposing a fine of $25 upon drug stores for selling cigars, etc., on Sunday, and a fine of $5 for the same offense upon restaurants, cafes, and lunch stands related to different occupations, and in the absence of any finding that those engaged in these occupations come in competition with each other, the ordinance will not be declared invalid upon the ground that it is discriminatory against the owners of drug stores." In *S. v. Burbage,* 172 N. C., 876, it was held that an ordinance prohibiting the pursuit of any ordinary business calling on Sundays is not invalid, as discriminatory, by reason of an exception in favor of drug stores.

In L. R. A., 1917, ch. ......, at p. 243, the whole subject of regulation of the sale and distribution of milk is discussed in *Chicago v. R. R.* (275 Ill., 30), with copious notes of decisions upon every phase of such regulation.

Milk is a most facile absorbent and distributor of the germs of disease, especially contagious diseases. The traffic therein must be regulated to safeguard the public health. The requirement of the license is even more to insure a correct census and effective supervision of all milk dealers (over 100 in Charlotte) than for aid in defraying the cost of supervision. The grievance of the defendant is both the supervision and the tax. But it cannot concern him that the owners of not more than two cows are exempted from the tax when they are liable with all others if dealers. The exemption embraces only those who raise their own supply of milk, and are not competitors in selling milk. This is neither unreasonable nor discriminatory.

No error.