[Civ. No. 4242.   Second Appellate District, Division One.—September 24, 1924.]

## WEST COAST THEATRES, INC., Respondent, v. THE CITY OF POMONA (a Municipal Corporation), Appellant.

[1] Constitutional Law—Regulation of Motion Picture Theaters—Police Power.—The regulation of motion picture theaters for the welfare of the people through the medium either of state statutes or by local ordinances is a subject for the proper exercise of the police power, where under improper management and in the absence of wholesome censorship, either from within or without the motion picture industry, the indiscriminate exhibition of motion pictures might have a tendency to lower the morality of the people and thus become a menace to society.

[2] Id.—Operation of Motion Pictures on Sunday—Discrimination Between Motion Picture Establishments and Certain Societies—Police Power—Validity of Ordinance.—A city ordinance which prevents the operation of a moving picture establishment as a business on Sundays and which permits the operation of a motion picture on the same day and without admission charge by a religious or a philanthropic society, constitutes a regulation of motion picture exhibitions and is not prohibitory, is within the police power and in no way invades the constitutional rights of those conducting a moving picture business.

---

(1) 38 Cyc., p. 258.   (2) 38 Cyc., p. 259.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Charles S. Burnell, Judge.   Reversed.

---

1.   See 19 R. C. L. 867.

2.   Applicability of Sunday laws to moving pictures, notes, 16 Ann. Cas. 408; 21 Ann. Cas. 682; Ann. Cas. 1914C, 782; Ann. Cas. 1916C, 304; 17 L. R. A. (N. S.) 1156; 30 L. R. A. (N. S.) 465; L. R. A. 1918B, 361.   See, also, 18 Cal. Jur. 850.

The facts are stated in the opinion of the court.

J. A. Allard, City Attorney, Nichols, Cooper & Hickson and Bert L. Cooper for Appellant.

Schweitzer & Hutton for Respondent.

HOUSER, J.—The question involved in this controversy concerns the constitutionality of an ordinance of the city of Pomona which in substance, so far as the plaintiff is concerned, will prevent it from exhibiting motion pictures "during any portion of any Sunday," but which ordinance will permit such an exhibition at such time by any religious or philanthropic society, provided that no admission fee be charged.

The history of the litigation commences with the adoption of an ordinance through an initiative election by the qualified voters of the city of Pomona, the text of which, so far as is here applicable, being as follows:

"Section 1. That it shall be unlawful for any person or persons, firm, corporation or association to keep open or permit to be kept open, within the corporate limits of the City of Pomona, any theater, moving picture theater, public dance hall, pool or billiard hall, skating rink or other place of public amusement, upon or during any portion of any Sunday. . . .

"Section 3. The provisions of Section 1 hereof shall not apply or be construed to apply to programs, concerts or entertainments given by religious, benevolent, fraternal, patriotic or charitable societies or other societies of like character and for admission to which said program, concerts or entertainments no admission fee is charged."

Following the certification by the city clerk of the city of Pomona of the passage of the ordinance, the plaintiff brought suit against the defendants wherein an injunction was sought restraining defendants from enforcing the ordinance. The defendants' demurrer to the complaint having been overruled and no answer thereto having been interposed by them within the time allowed by law, judgment was entered against the defendants as prayed.

It is contended by respondent that the ordinance violates both the state and the federal constitution in that its enforcement would deprive the plaintiff of liberty and property without due process of law, and that it would deny to the plaintiff the equal protection of the law; furthermore, that such ordinance is violative of the state constitution in that it constitutes the passage of a local or special law where a general law could have been made applicable (subd. 33, sec. 25, art. IV); and that certain citizens or classes of citizens are granted privileges or immunities which, upon the same terms, are not granted to all citizens (sec. 21, art. I).

At the outset it is conceded by counsel representing the plaintiff that all legislative guaranties must yield to the proper and reasonable exercise of police power; that any ordinance enacted by a city for the health, welfare, or comfort of its citizens is valid, provided that any substantial reason exists for the passage of such ordinance (*Curtis* v. *Los Angeles,* 172 Cal. 230 [156 Pac. 462]; *Ex parte Haskell,* 112 Cal. 412 [32 L. R. A. 527, 44 Pac. 725]; *Ex parte Tuttle,* 91 Cal. 589 [27 Pac. 933]; *In re Miller,* 162 Cal. 687 [124 Pac. 427]); that "Sunday laws" are universally held constitutional, and in this state "upon the ground that every man is entitled to at least one day out of seven within which to recuperate and rest" (*Ex parte Newman,* 9 Cal. 519; *Ex parte Andrews,* 18 Cal. 680; *Ex parte Bird,* 19 Cal. 130; *Ex parte Burke,* 59 Cal. 6 [43 Am. Rep. 23]; *Ex parte Koser,* 60 Cal. 177; *Ex parte Jentzsch,* 112 Cal. 472 [32 L. R. A. 664, 44 Pac. 803]), and that the city, through the agency of its legislative body, has the power to regulate amusements and to establish censorship concerning same (26 Ruling Case Law, p. 698, and cases there cited). On the other hand, it is contended that the exercise of police power is always subject to judicial scrutiny to determine its reasonableness; in other words, that the mere passage of an act by a legislative body ostensibly for the promotion of the health, comfort, or the welfare of the people, is not necessarily conclusive, nor beyond inquiry by the judicial branch of the government for the purpose of ascertaining whether or not, as a matter of law, the right has been properly exercised; and so much appears to be conceded by the defendant.

[1]   That motion picture theaters are or may be used for the purposes other than for mere amusement is readily apparent; likewise that under improper management and in the absence of wholesome censorship, either from within or without the motion picture industry, the indiscriminate exhibition of motion pictures might have a tendency to lower the morality of the people and thus become a menace to society. Viewed from the latter standpoint and in anticipation of such a possible result, the regulation of the motion picture theaters for the welfare of the people through the medium either of state statutes or by local ordinances is clearly a subject for the proper exercise of the police power.   As is stated in 26 Ruling Case Law, page 699, where many authorities are cited: "Exhibitions of motion pictures are usually classed among those pursuits which are liable to degenerate and menace the good order and morals of the people, and may in the exercise of the police power be licensed and regulated, and in proper cases prevented."

While several different minor angles of the question involving the constitutionality of the ordinance in question are discussed in the briefs of respective counsel, the controlling feature of the controversy turns upon the right of the municipality to enact an ordinance which in effect discriminates as between the operation on Sunday of a moving picture establishment as a business, and the perhaps casual operation of a motion picture on the same day and without admission charge by a religious or a philanthropic society.   The leading case in this state in which an attempted statutory discrimination as to Sunday closing failed of judicial affirmance as to its constitutionality is that of *Ex parte Jentzsch*, 112 Cal. 468 [32 L. R. A. 664, 44 Pac. 803], in which it was held that a statute making it a misdemeanor to keep open or to conduct a barber-shop, etc., or to work as a barber on Sunday, or on legal holidays, was special legislation, based upon an arbitrary classification not proper in the exercise of police power; that it was an undue restraint on personal liberty, and consequently was unconstitutional and void.   In another case entitled *Ex parte Westerfield*, 55 Cal. 550 [36 Am. Rep. 47], where bakeries and bakers, similarly situated, were the subject of the statute, the same conclusion was reached.   But beginning with the case entitled

*Ex parte Andrews,* 18 Cal. 679, and continuing down through *Ex parte Bird,* 19 Cal. 130, *Ex parte Burke,* 59 Cal. 6 [43 Am. Rep. 231], *Ex parte Koser,* 60 Cal. 177, and *In re Sumida,* 177 Cal. 388 [170 Pac. 823], it is consistently held that the statute may be discriminatory as between such places of business as pool or billiard halls, skating-rinks, theaters, or other places of public amusement on the one side, and hotels, restaurants, livery-stables, drug-stores, confectionery stores, ice-cream parlors, or garages on the other side; and while permitting the latter class to operate on Sundays, at the same time may prevent either business or all of the businesses included in the former class from doing so. Although the cases to which reference has been had, and especially the one entitled *In re Sumida,* 177 Cal. 388 [170 Pac. 823], unquestionably and unmistakably announce the rule that such a statute as any of those therein considered is a reasonable exercise of the police power and not subject to the objection either that it is discriminatory or class legislation, or that it is an unlawful invasion of the right of property, or that it is a taking of property without due process of law, or that it deprives persons of the equal protection of the laws—the precise point that by virtue of the ordinance or statute one individual is restrained, and another set of individuals is authorized, on Sundays to do an identical act, is neither discussed nor involved. However, leaving out of consideration as immaterial the particular day of the week affected by the ordinance in question, and considering only that part thereof which has to do with the discrimination as to the individuals who perform the act of conducting a motion picture exhibition, in the case entitled *In re Murphy* (first decided by the appellate court in a *habeas corpus* proceeding, and reported in 8 Cal. App. 440 [97 Pac. 199], and later, on identical facts, in a like proceeding, ruled on by the supreme court, as found in volume 155 of the California Reports, at page 322 [100 Pac. 1134], and still later on a writ of error to the supreme court of the United States, as reported in 225 U. S. 623 [41 L. R. A. (N. S.) 153, 56 L. Ed. 1229, 32 Sup. Ct. Rep. 697, see, also, Rose's U. S. Notes]), in which case the municipal ordinance under consideration prohibited the keeping of billiard or pool tables for hire or

public use, but expressly permitted hotel-keepers to maintain a billiard or pool room in which their regular guests might play—the principle was laid down (and for which substantial reasons were given) that the police power of the state justified such discrimination and that its exercise did not deny equal protection of the laws to a person who, prior to the enactment or adoption of the ordinance, was the owner and proprietor of a pool-hall within the limits of the municipality. And it was further held therein that notwithstanding the fact that a pool-hall may not constitute a nuisance *per se,* its operation may be either regulated, as was contemplated by the ordinance under consideration, or, that it may be absolutely prohibited.

In the case of *Dominion Hotel* v. *Arizona,* 249 U. S. 265 [63 L. Ed. 597, 39 Sup. Ct. Rep. 273], it appeared that the legislature of the state of Arizona had passed a law which forbade the employment of women in certain occupations, including that of labor in restaurants, for more than eight hours within a period of twelve hours, but expressly provided as an exception thereto that the law as to such employment should be inapplicable as to "railroad restaurants and eating houses." In an opinion written by Mr. Justice Holmes it was held that the exception in the statute as to railroad restaurants was not such an arbitrary discrimination against hotels and other restaurants as to render the statute invalid as denying the equal protection of the laws. In the course of the opinion it is said: "The 14th Amendment is not a pedagogical requirement of the impracticable. The equal protection of the laws does not mean that all occupations that are called by the same name must be treated in the same way. The power of the state 'may be determined by degrees of evil, or exercised in cases where detriment is especially experienced' (citing cases). It may do what it can to prevent what is deemed an evil, and stop short of those cases in which the harm to the few concerned is thought less important than the harm to the public that would ensue if the rule laid down were made mathematically exact. The only question is whether we can say on our judicial knowledge that the legislature of Arizona could not have had any reasonable ground for believing that there were such public considerations for the distinction made by the present law.

The deference due to the judgment of the legislature on the matter has been emphasized again and again (citing cases). Of course, this is especially true when local conditions may affect the answer—conditions that the legislature does, but that we cannot, know (citing cases)."

In the case of *Central Lumber Co.* v. *South Dakota*, 226 U. S. 157 [57 L. Ed. 164, 33 Sup. Ct. Rep. 66, see, also, Rose's U. S. Notes], where the court ruled as to the constitutionality of a statute which forbade the sale of goods at different prices at two or more places, it is said: "It [the legislature] may direct its laws against what it deems the evil as it actually exists without covering the whole field of possible abuses, and it may do so none the less that the forbidden act does not differ in kind from those that are allowed."

And in *Matter of Application of Martin*, 157 Cal. 51 [26 L. R. A. (N. S.) 242, 106 Pac. 235], where the act under consideration had to do with a limitation upon hours of labor in mines, the opinion contains the following: "The law is not rendered special by the mere fact that it does not cover every subject which the legislature might conceivably have included in it. It is enough that the subjects covered possess such intrinsic peculiarities as to justify the legislative determination that those subjects require special enactment." And to the same point, see *Matter of Application of Miller*, 162 Cal. 687 [124 Pac. 427]; *Miller* v. *Wilson*, 236 U. S. 373 [L. R. A. 1915F, 829, 59 L. Ed. 628, 35 Sup. Ct. Rep. 342, see, also, Rose's U. S. Notes].

The governing principle is covered by the statement that "it is only when a business is lawful and has no injurious tendency that the governing body cannot say who shall and who shall not exercise the right itself." (*Goytino* v. *McAleer*, 4 Cal. App. 655 [88 Pac. 991], citing *County of Los Angeles* v. *Hollywood Cemetery Assn.*, 124 Cal. 344 [71 Am. St. Rep. 75, 57 Pac. 153].)

[2] That the ordinance in question is within the police power of the state, and that it constitutes a regulation of motion picture exhibitions and is not prohibitory, see the well-considered cases of *Ames* v. *Gerbracht*, 194 Iowa, 267 [189 N. W. 729], and *Power* v. *Nordstrom*, 150 Minn. 328 [184 N. W. 967].

Considering that, according to the authorities to which reference has been had, moving pictures "are liable to degenerate and menace the good order and morals of the people," for present purposes they must be classed with other businesses having like tendencies and as such subject to the same rules governing their operation. In reliance upon the rule that "Sunday laws" are universally upheld, and in line with the decision in the Murphy case, *supra*, it must be held that the prevention of the plaintiff from transacting its business on Sundays and at the same time permitting an apparently identical act by a religious organization or a philanthropic society in no way invades the plaintiff's constitutional rights.

The judgment is reversed.

Conrey, P. J., and Curtis, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 20, 1924.

All the Justices concurred.