75 S.E.2d 783 (1953)
237 N.C. 633
STATE
v.
McGEE.
No. 508.
Supreme Court of North Carolina.
May 6, 1953.
*785 Richard M. Welling, Welling & Welling, and Maurice A. Weinstein, Charlotte, for defendant-appellant.
Harry McMullan, Atty. Gen., Claude L. Love, Asst. Atty. Gen., and Gerald F. White, Member of Staff, Raleigh, for the State.
DENNY, Justice.
The right of a municipality to enact and enforce ordinances relative to the observance of Sunday must be delegated, if it exists, by the Legislature. Municipal corporations have no inherent police powers and can exercise only those conferred by statute. Kass v. Hedgepeth, 226 N.C. 405, 38 S.E.2d 164; Rhodes, Inc. v. City of Raleigh, 217 N.C. 627, 9 S.E.2d 389, 130 A.L.R. 311; State v. Dannenberg, 150 N.C. 799, 63 S.E. 946; State v. Ray, 131 N.C. 814, 42 S.E. 960, 60 L.R.A. 634; McQuillin, Municipal Corporations, Third Edition, Volume 6, Section 24.189, page 768, et seq. It is well settled, in view of the increasing scope of municipal power for the benefit of the public that the police power is as extensive as may be required for the protection of the public health, safety, morals and general welfare of the people. Turner v. City of New Bern, 187 N.C. 541, 122 S.E. 469, citing Camfield v. United States, 167 U.S. 518, 17 S.Ct. 864, 42 L.Ed. 260, and Bacon v. Walker, 204 U.S. 311, 27 S.Ct. 289, 51 L.Ed. 499. Likewise, in Moore v. City of Greensboro, 191 N.C. 592, 132 S.E. 565, this Court said: "The enforcement of police regulations is a governmental function * * *, and it has been said that upon the exercise of this power depend the life, safety, health, morals, and the comfort of the citizen, the enjoyment of private and social life, the beneficial use of property, and the security of social order. Slaughterhouse Cases, 16 Wall. [36] 62, 21 L.Ed. 394."
The power to enact ordinances requiring the observance of Sunday has been delegated to municipalities of the State by G.S. §§ 160-52, 160-200(6) (7) (10); and in addition to these general powers granted to all municipalities of the State, the Charter of the City of Charlotte, being Chapter 366 of the Public-Local Laws of 1939, provides in section 32, that, "In addition to the powers now or hereafter granted to municipalities under the General Laws of the State of North Carolina, the City of Charlotte shall have and retain those express powers granted to it by Section forty-eight and the subsections thereof of Chapter three hundred forty-two of the Private Laws of nineteen hundred seven which, together with certain other additional powers hereby granted to said city, are as follows: * * (13) To pass ordinances for the due observance of Sunday and for maintenance of order in the vicinity of churches and schools."
The defendant contends, however, that the powers granted in the above statutes to *786 enact and enforce the observance of Sunday have been withdrawn from all municipalities in the State by the repeal of G.S. § 103-1, by Chapter 73 of the Session Laws of 1951. Section 1 of this act is in the following language: "G.S. 103-1 is hereby repealed in its entirety." Section 2 of the act reads as follows: "All laws and clauses of laws in conflict with this Act are hereby repealed." It is contended that since G.S. § 160-52 provides that the governing body of a municipality "shall have power to make ordinances, rules and regulations for the better government of the town, not inconsistent with this chapter and the law of the land (italics ours), as they may deem necessary; and may enforce them by imposing penalties on such as violate them; and may compel the performance of the duties imposed upon others, by suitable penalties", the repeal of G.S. § 103-1 makes any and all ordinances with respect to the observance of Sunday contrary to "the law of the land." In other words, the defendant insists that by the repeal of G.S. § 103-1, which was originally adopted in 1741, forbidding work in ordinary callings on Sunday, the State established a new policy with respect to Sunday labor and the conduct of business enterprises on that day.
It should be kept in mind that a violation of G.S. § 103-1, while it was in force, did not constitute an indictable offense but made the violator subject to a pecuniary fine or penalty, recoverable by summary proceeding before a justice of the peace. State v. Williams, 26 N.C. 400; State v. Brooksbank, 28 N.C. 73; Rodman v. Robinson, 134 N.C. 503, 47 S.E. 19, 65 L.R.A. 682, 101 Am.St.Rep. 877. Moreover, while this statute was in effect it was held not to be in conflict with ordinances enacted by municipalities requiring the observance of Sunday. State v. Medlin, 170 N.C. 682, 86 S.E. 597; State v. Davis, 171 N.C. 809, 89 S.E. 40.
Ruffin, C. J., in the case of State v. Williams, supra, in pointing out that a violation of the Act of 1741, subsequently codified as G.S. § 103-1, did not constitute an indictable offense, made this observation: "The Legislature has hitherto thought the penalties given in the Act of 1741, sustained by public sentiment, adequate securities for the decent observance of the day. The event has, upon the whole, justified that opinion. * * * For even the few persons whose own principles, as moral and religious persons, might not have restrained them from the profanation of the day have been restrained by a willingness to obey the law as enacted in the statute of 1741, or by a just respect for the opinions and feelings of their fellow-citizens, to whom, as a body, secular labor on Sunday is a scandal and offense." This statute had been in effect for 103 years when Chief Justice Ruffin made his observation. However, 107 years later it had become apparent that the statute was no longer effective as a deterrent to the profanation of the Sabbath. In fact for many years prior to its repeal it had been almost completely ignored. But its repeal in no sense should be construed as a legislative intent to place the stamp of approval upon the profanation of the Sabbath. To the contrary, in addition to the ineffectiveness of the act, its repeal may have been motivated by the fact that the more effective method of enforcing measures for the observance of Sunday is to make the violation thereof an indictable offense. And the fact that the Legislature has passed no state-wide act on this subject since the repeal of the 1741 Act, G.S. § 103-1, does not impair the police powers heretofore granted to municipalities to adopt ordinances requiring observance of Sunday. For, after all, the need for regulation in this respect is usually within areas embraced within the corporate limits of our towns and cities, rather than in the rural areas of the State.
Therefore, we hold that neither the repeal of G.S. § 103-1 nor the provision with respect to the repeal of all laws and clauses of laws in conflict therewith, have the effect of repealing police powers granted to municipalities by G.S. §§ 160-52 and 160-200(6) (7) (10), and to the City of Charlotte in its Charter.
Municipal ordinances prohibiting the pursuit of all occupations generally on Sunday, except those of necessity or charity, have been uniformly held constitutional in this jurisdiction. State v. Weddington, 188 N. *787 C. 643, 125 S.E. 257, 37 A.L.R. 573; State v. Burbage, 172 N.C. 876, 89 S.E. 795; State v. Davis, supra; State v. Medlin, supra. This view seems to be in accord with the decisions generally throughout this country. Hennington v. State of Georgia, 163 U.S. 299, 16 S.Ct. 1086, 41 L.Ed. 166; Petit v. State of Minn., 177 U.S. 164, 20 S. Ct. 666, 44 L.Ed. 716; Rosenbaum v. City & County of Denver, 102 Colo. 530, 81 P.2d 760; State v. Cranston, 59 Idaho 561, 85 P.2d 682; City of Harlan v. Scott, 290 Ky. 585, 162 S.W.2d 8; Ex parte Johnson, 77 Okl.Cr. 360, 141 P.2d 599; Broadbent v. Gibson, 105 Utah 53, 140 P.2d 939; Ex parte Johnson, 20 Okl.Cr. 66, 201 P. 533; Komen v. City of St. Louis, 316 Mo. 9, 289 S.W. 838; Annotation 29 A.L.R. 402; Mc-Quillin, Municipal Corporations, Third Edition, Volume 6, Section 24.188, page 767; 50 Am.Jur., Sundays & Holidays, Section 9, page 808.
Consequently, we hold that the ordinance of the City of Charlotte, now under attack, is not invalid for lack of power in its governing body to enact or enforce any ordinance requiring the observance of Sunday.
The second reason assigned upon which the defendant challenges the validity of the ordinance is on the ground that it is arbitrary, unreasonable, and discriminatory; that it deprives him of his rights, liberties, freedoms and property without due process of law; and denies him the equal protection of the law; all in violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States, and Article I, section 17, of the Constitution of this State.
It is a fundamental rule that the governing body of a municipality, clothed with power to enact and enforce ordinances for the observance of Sunday, "is vested with discretion in determining the kinds of pursuits, occupations, or businesses to be included or excluded, and its determination will not be interfered with by the courts provided the classification and discrimination made are founded upon reasonable distinctions and have some reasonable relation to the public peace, welfare, and safety." 50 Am.Jur., Sundays & Holidays, section 11, page 810.
Barnhill, J., in speaking for this Court in State v. Trantham, 230 N.C. 641, 55 S.E.2d 198, 200, said: "Legislative bodies may distinguish, select, and classify objects of legislation. It suffices if the classification is practical. Magoun v. Illinois Trust & Savings Bank, 170 U.S. 283, 18 S.Ct. 594, 42 L.Ed. 1037; State v. Davis [171 N.C. 809, 89 S.E. 40], supra. They may prescribe different regulations for different classes, and discrimination as between classes is not such as to invalidate the legislative enactment. Smith v. Wilkins, 164 N.C. 135, 80 S.E. 168. The very idea of classification is inequality, so that inequality in no manner determines the manner of constitutionality. Bickett v. Tax Commission, 177 N.C. 433, 99 S.E. 415; Atchison, T. & S. F. R. Co. v. Matthews, 174 U.S. 96, 19 S.Ct. 609, 43 L.Ed. 909. The one requirement is that the ordinance must affect all persons similarly situated or engaged in the same business without discrimination. City of Springfield v. Smith, 322 Mo. 1129, 19 S.W.2d 1."
The defendant does not claim that the ordinance discriminates against him in so far as it applies to any other person or persons similarly situated and engaged in the theatre business. But he insists the ordinance is invalid because during the hours from 6:30 p.m. to 9:00 p.m. on Sunday, while he is not permitted to operate his Drive-In theatre, it permits radio and television stations to operate in the City of Charlotte.
In our opinion, the operation of a motion picture theatre is an entirely different business from that of operating a radio or television station, and these operations may be placed in different classifications. Moreover, the ordinance forbids the operating, during certain hours, of any place of amusement, or the conducting of any show, game, or sport where a fee is charged for admission as a spectator, or a fee is charged to participate in any game, sport or amusement. No fee is required to be paid before one can listen to his radio or watch a television show. *788 There is no merit in the contention that the ordinance is discriminatory in this respect.
We now consider whether it is arbitrary and unreasonable. Ordinances of this character cannot be upheld if arbitrary and unreasonable, but must rest upon a reasonable exercise of existing police power. In 50 Am.Jur., Sundays & Holidays, section 9, page 808, it is said: "According to the present view, Sunday laws are based on the experience of mankind as to the wisdom and necessity, for both the physical and moral welfare of man, of having at stated intervals a day of rest from customary labor. Consequently, such laws have been uniformly recognized as a legitimate exercise of the police power. Since the purpose of Sunday statutes is to promote the physical and moral nature of man, the right to prohibit secular pursuits on Sunday is not affected by the fact that they may be noiseless and harmless in themselves."
In McQuillin, Municipal Corporations, Third Edition, Volume 6, section 24.189, page 768, et seq., the author says: "It has been said that laws and ordinances respecting Sunday observance clearly are within the genius of our institutions and the spirit of our national life. * * * The majority rule is that municipal competence to regulate Sunday observance and prohibit certain businesses and activities on that day or during certain hours on Sunday may be predicated on the municipal police, general or public welfare power. A Sunday regulation is designed to conserve the peace, good order and health by compelling a day of rest each week, and it may be sustained as a measure contributing to public morality." This same author, in his work on municipal corporations, same edition, Volume 7, section 24.218, page 45, says: "Ordinances forbidding, or regulating the time of operation of, theatres, or the showing of motion pictures on Sunday have been upheld as constitutional and valid. The enactment of such an ordinance is within the municipal police power. Such an ordinance is authorized by delegated power to regulate motion picture shows," citing West Coast Theatres v. City of Pomona, 68 Cal.App. 763, 230 P. 225; City of Ames v. Gerbracht, 194 Iowa 267, 189 N.W. 729; City of West Monroe v. Newell, 163 La. 409, 111 So. 889; Power v. Nordstrom, 150 Minn. 228, 184 N.W. 967, 18 A.L.R. 733; Ex parte Johnson, supra, 201 P. 533; Blackledge v. Jones, 170 Okl. 563, 41 P.2d 649; Hicks v. City of Dublin, 56 Ga.App. 63, 191 S.E. 659.
In State v. Medlin, supra [170 N.C. 682, 86 S.E. 597], the Town of Zebulon had adopted an ordinance which prohibited keeping any shop or store open on Sunday for the purpose of buying and selling (except ice), but provided that "drug stores may be kept open at all times on Sunday for the sale of drugs and medicines, and from 6 to 9:30 o'clock in the morning and from 1 to 4:30 o'clock in the afternoon for the sale of drugs, medicines, mineral waters, soft drinks, cigars and tobacco only." The defendant who did not operate a drug store, opened his grocery store between the hours of 6 and 8 o'clock a. m., on Sunday, January 18, 1915, while the above ordinance was in full force and effect, and sold cigars, cigarettes and coca-cola to several purchasers and received cash payments therefor. At this same time, a drug store in Zebulon was open for the sale of these same articles. The Court said: "This ordinance, which prohibits keeping open stores and other places of business for the purpose of buying or selling (except ice), excepts drugs and medicines, and permits the drug stores to sell soft drinks and tobacco for a limited time in the morning and afternoon, as a convenience to public customs, is not an unreasonable exercise of the police power. Neither does it cover the same ground as Revisal, § 2836 [later codified as G.S. § 103-1]. Such local regulations are within the powers conferred on town authorities in their exercise of the police power, and, if not satisfactory to the community, such regulations will doubtless be changed at the instance of their constituents or by the election of a new board of commissioners. Public sentiment in this regard varies in different localities, and the power of making these local regulations is simply an exercise of `home rule,' which is wisely vested in the town commissioners to conform to the sense of public decency *789 and peace and order which is observed by compliance with the sentiments of their constituents. Such regulations are neither already provided by the general law, nor are they forbidden by any statute." This decision has been followed and cited with approval in State v. Davis, supra; State v. Burbage, supra; Lawrence v. Nissen, 173 N.C. 359, 91 S.E. 1036; State v. Kirkpatrick, 179 N.C. 747, 103 S.E. 65; State v. Weddington, 188 N.C. 643, 125 S.E. 257, 37 A.L.R. 573.
In the case of State v. Weddington, supra, the facts were that the governing authorities of the Town of Faith enacted an ordinance providing, "that it shall be unlawful for any person or persons, merchants, tradesmen or company to sell or offer for sale on Sunday any goods, wares, drinks, or merchandise of any kind or character, except in case of sickness or absolute necessity in the town of Faith." The defendant, a restaurant operator, sold a coca-cola as a part of a lunch. It was urged on appeal to this Court that the ordinance was unreasonable, oppressive, in derogation of common right, and to this extent should be declared void and of no effect, as transcending the bounds of a reasonable exercise of the police power of the Town of Faith. Stacy, J. (later Chief Justice), in speaking for the Court in upholding the ordinance, said: "The defendant's position is not without force, because the suggested exception strongly appeals to the common judgment of men as being meet and proper under such conditions, but it must be remembered that we are dealing with the exercise of an unquestioned police power, and whether it transcends the bounds of reasonnot with its wisdom or impolicy. State v. Vanhook, 182 N.C. 831, 109 S.E. 65; State v. Austin, 114 N.C. [855] 857, 19 S.E. 919, 25 L.R.A. 283. The peculiar conditions and evils to be remedied in the town of Faith can best be understood by the commissioners of that town, and the courts are permitted to check their acts only when they are palpably unreasonable and oppressive."
The ordinance under consideration not only applies to picture shows, but to other theatres, tennis courts, squash courts, golf courses, swimming pools, baseball games, football games, and other outdoor athletic courts, parks, etc. The City of Charlotte permits all these places of amusement and sports activities, which are operated or conducted for private gain, to operate or be conducted between the hours of 1:30 p. m. and 6:30 p. m. on Sunday, but to close from 6:30 p. m. to 9:00 p. m. For all practical purposes, this closes substantially all these places of amusement except theatres, and prevents the sport activities, except to a very limited extent, after 6:30 p. m. Doubtless, very few people care to play tennis or squash after 9:00 p. m.; no baseball or football games are ordinarily scheduled to begin after 9:00 p. m. on Sunday. Certainly golf would not be played after that hour. And except in extremely warm weather, it is doubtful that swimming pools could attract sufficient patronage after 9:00 p. m. to justify their remaining open.
After all, the governing body of the City of Charlotte has determined in the exercise of its police power that certain classified places of amusement may be operated and certain designated sports activities may be held or participated in within the City of Charlotte from 1:30 p. m. to 6:30 p. m., and after 9:00 p. m. on Sunday. And in view of the many secular pursuits sought to be regulated, coupled with the fact that the local town and city authorities are in a position to know the peculiar conditions and evils that need to be regulated in their respective municipalities, we do not think the provisions of the ordinance under consideration, with respect to the hours of regulation, may be held arbitrary and unreasonable. State v. Medlin, supra; State v. Weddington, supra.
Furthermore, the mere fact that the defendant operates an outdoor theatre and may be unable to exhibit more than one show on Sunday, is insufficient to sustain his contention that the ordinance deprives him of his constitutional rights without due process of law.
The defendant has certainly not shown that the ordinance is "palpably unreasonable and oppressive." State v. Weddington, supra; Komen v. City of St. Louis, supra (ordinance requiring bakeries to close after *790 9:00 a. m. on Sunday, held valid); Ex parte Johnson, supra, 201 P. 533 (held the regulation or prohibition of Sunday amusements, including moving picture shows, not unconstitutional); Hicks v. City of Dublin, supra (upheld ordinance limiting the time motion picture shows could be open on Sunday); Richman v. Board of Commissioners of City of Newark, 122 N.J.L. 180, 4 A.2d 501 (upheld an ordinance prohibiting the sale of groceries on Sunday between the hours of 1:00 p. m. and 12:00 o'clock midnight).
We now consider the final question raised by the defendant. Does the fact that most of the churches in the City of Charlotte have religious services at some hour between 6:30 p. m. and 9:00 p. m. on Sunday, make the ordinance subject to successful attack as offending the First Amendment of the Constitution of the United States and Article I, Section 26, of the Constitution of this State? Conceding that the governing body of the City of Charlotte may have taken this fact into consideration in determining the hours during which places of amusement would be permitted to open on Sunday, this does not perforce mean that the ordinance was not enacted pursuant to the legitimate exercise of the police power. We have numerous provisions in our statutes prohibiting the establishment of various business activities near churches. The influence that led to the enactment of those measures was the respect and consideration the legislators had for churches as religious institutions, and the wholesome influence they exert in their respective communities; but the power to enact those measures was derived from civil authority and not from religious motives or considerations. Clark, C. J., in speaking for this Court in Rodman v. Robinson, supra, [134 N.C. 503, 47 S.E. 21], said: "It is incorrect to say that Christianity is a part of the common law of the land, however it may be in England, where there is union of church and state, which is forbidden here. The beautiful and divine precepts of the Nazarene do influence the conduct of our people and individuals, and are felt in legislation and in every department of activity. They profoundly impress and shape our civilization. But it is by this influence that it acts, and not because it is a part of the organic law, which expressly denies religion any place in the supervision or control of secular affairs."
In our opinion, the ordinance is not subject to attack on the ground assigned. There is nothing in it that offends the First Amendment of the Constitution of the United States, or that attempts to interfere with the natural and inalienable right of man to worship Almighty God according to the dictates of his own conscience, as vouchsafed to all citizens in Article I, Section 26, of our State Constitution. The ordinance contains no provision that may be construed as impinging upon the freedom of conscience. It neither purports to compel nor deny the observance of any religious duty.
It so happens that the great majority of people desire to observe Sunday as the day of rest. And measures for its observance do not come from a desire to impose upon the conscience of any individual, but rather to promote the public health, the general welfare, safety and morals of the people and to give them an opportunity to rest from their secular activities.
Long before civil governments undertook to exercise their police power to enforce the observance of Sunday as a means of promoting the public health, the general welfare, safety, and morals of the people, Christians had chosen this day in commemoration of the Resurrection, in lieu of the Old Testament Sabbath which fell on Saturday. And the fact that an ordinance may require the cessation of secular pursuits on Sunday during the hours in which churchgoing people usually attend religious services, will not be held unconstitutional, if otherwise reasonable and valid.
After a careful consideration of the questions raised on the record, and the authorities bearing thereon, we are of the opinion that the challenged ordinance is constitutional and, therefore, the verdict below must be upheld.
Affirmed.